TODD *v.* HUDSON MOTOR CAR COMPANY.

1. WORKMEN'S COMPENSATION—ACCEPTANCE OF FAVORED EMPLOYMENT—MORALE—CRIMINAL CONDUCT.

It is the duty of a disabled employee to co-operate, not only by accepting tendered favored employment which he is physically able to perform, but also by refraining from criminal conduct destructive to the morale of his fellow employees and his employer's business (CL 1948, § 412.11).

2. SAME—PARTIAL DISABILITY—DISCHARGE FOR GAMBLING.

Partially disabled employee who had been given lighter work which he was able to perform, and who was discharged because of criminal gambling activities while at work was not entitled to compensation for resultant loss of earnings since his favored employment ceased through his own volition and turpitude and not by reason of his accidental injury (CL 1948, § 412.11).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  58 Am Jur, Workmen's Compensation, §§ 284, 286.

Appeal from Workmen's Compensation Commission. Submitted June 7, 1950. (Docket No. 21, Calendar No. 44,573.) Decided September 11, 1950.

Elmer Todd presented his claim for compensation against Hudson Motor Car Company, employer, and Michigan Mutual Liability Company, insurer, for injuries sustained while in its employ. Award to plaintiff. Defendants appeal. Reversed.

*Marcus, Kelman & Loria,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendant.

BUTZEL, J. The Hudson Motor Car Company and the Michigan Mutual Liability Company appeal from an order of the workmen's compensation commission awarding Elmer Todd compensation for partial disability during a 6-month period of unemployment. The sole question raised is whether a partially disabled employee who had been given lighter work is entitled to be awarded compensation after his discharge for gambling.

Plaintiff was hired by the Hudson Motor Car Company in August, 1944, as a common laborer and remained such during the entire period of his employment. He was first injured while working as a sandblaster, a job that required him to bend and lift 80- to 100-pound motor blocks. On February 25, 1946, a crane magnet, that was inadvertently unloaded, dropped 2 motor blocks on him. The first of these struck his shoulder, knocking him down, and the second fell across his back while he was lying prostrate. He was taken to the Michigan Mutual Hospital where he remained 6 days. Diagnosis and X-rays revealed fractured transverse processes on the second, third, fourth and fifth lumbar vertabrae.

Plaintiff returned to work on March 12, 1946, and was paid compensation for the period of incapacity. For some time he was given lighter work which did not require bending or manual lifting. Later, on August 28, 1947, while again employed at sandblasting, he incurred some back injury while lifting a motor block. The record is not clear as to whether this was the first day of his reassignment to sandblasting or whether he had been doing this heavier work for some time. Plaintiff resumed work on September 10, 1947, and was paid compensation for this second period of incapacity. He was again assigned to lighter work which did not require bending or manual lifting. On November 13, 1947, he was discharged for gambling.

On May 11, 1948, plaintiff was hired by the Briggs Manufacturing Company as a stock handler. The work required him to take 40- to 50-pound automobile doors from a rack and place them on hooks, but did not involve bending.

Plaintiff suffered no loss of earnings while engaged in the lighter work at the Hudson Motor Car Company or after he was employed by the Briggs Manufacturing Company. He had unsuccessfully sought work at various automobile factories during the period intervening between his discharge and subsequent employment, and was on relief part of this time.

The medical evidence is conflicting, but there is testimony that bony bridging between the fractured transverse processes has caused some rigidity of the lumbar spine and would render plaintiff unable to do work requiring much stooping or bending and that he would have difficulty lifting heavy weights, such as motor blocks.

We limit our opinion to the sole question propounded, the effect of discharge for gambling. The discussion of this matter will be predicated upon a

factual premise that plaintiff was partially disabled and was engaged in favored employment at the time of his discharge. Plaintiff contends that the reason for discharge has absolutely no bearing upon compensability. He has cited as authority supporting this proposition several cases which shall here be considered.

In *Foley* v. *Detroit United Railway*, 190 Mich 507, the claimant suffered a continuing partial disability to perform the work of a motorman, at which he had been injured. He was given favored employment as a watchman and was discharged for misbehavior while his petition for further compensation was pending. In affirming the compensation award, we stated that the reason for his discharge, whether for misbehavior or simply arbitrary, was immaterial inasmuch as under the provisions of CL 1915, § 5441 the test of compensability was the loss of earning capacity in the same employment as when injured, regardless of whether the claimant had an equal or greater earning capacity in favored employment. This holding became inapplicable after the enactment of PA 1927, No 376, the pertinent portion of which is now in section 11 of the workmen's compensation law CL 1948, § 412.11 (Stat Ann 1949 Cum Supp § 17.161). It provides:

"The compensation payable, when added to his wage earning capacity after the injury in the same *or another* employment, shall not exceed his average weekly earnings at the time of such injury." (Italics ours.)

For a discussion of the application of this provision see *MacDonald* v. *Great Lakes Steel Corp.*, 268 Mich 591; *Smith* v. *Pontiac Motor Car Co.*, 277 Mich 652; *Markey* v. *S. S. Peter & Paul's Parish*, 281 Mich 292; *Satawa* v. *L. A. Young Spring & Wire Corp.*, 304 Mich 264.

In *Neal* v. *Stuart Foundry Co.*, 250 Mich 46, the claimant was awarded compensation for total disability. During a portion of the period covered by the award, the claimant was confined in Wayne county jail by the immigration authorities. We held that being in jail could hardly increase the claimant's already existent inability to work and that a summary suspension of his fixed award would deprive him of property without due process of law; that an employee, though innocent, might be arrested and criminally charged. In the instant case claimant was not totally disabled and the due process question is not involved.

In *Ward* v. *Heth Bros.*, 212 Mich 180, we held that supervening insanity of a claimant does not relieve the employer of the obligation of continuing payment of a fixed compensation award. In *Sotomayor* v. *Ford Motor Co.*, 300 Mich 107, an evenly divided court affirmed an award of additional compensation for partial disability to a claimant who was prevented by leprosy from continuing in favored employment at earnings equal to or higher than those received at the time of his injury. The opinion for affirmance, which did not consider making an award for total disability, stated that this particular claimant had not established an earning capacity at the favored employment and that the supervening leprosy did not relieve defendant from the adjudicated liability for compensation for partial disability. The opinion for reversal readily distinguished *Neal* v. *Stuart Foundry Co.*, *supra*, and *Ward* v. *Heth Bros.*, *supra*, on the ground that the claimant in each of those cases was receiving compensation for partial disability when his employment was terminated and that the employer in each case had petitioned to be relieved from further compensation. The opinion for reversal further pointed out that were it not for the leprosy, which had no connection with the acci-

dental injury, claimant could have continued to work at the favored employment and there would have been no basis for a resumption of compensation.

The 2 foregoing cases should be read in the light of *Dunavant* v. *General Motors Corp.*, 325 Mich 482, not cited by plaintiff, wherein the claimant who was receiving compensation for partial disability while working at favored employment became unable to continue working because of pulmonary tuberculosis which was not associated with his injury. We held that the claimant was not entitled to increased compensation payments as his inability to work at the favored employment available to him did not result by reason of his accidental injury or any act on the part of his employer.

In *Dyer* v. *General Motors Corp.*, 318 Mich 216, a claimant who had to be discharged from favored employment for refusal to pay union dues was granted the maximum award for partial disability. However, that case does not establish the right to compensation in the instant one, as even had that claimant paid his union dues and continued working he would have been entitled to the same compensation because of the diminution in earning capacity while engaged in the favored employment.

In *Finch* v. *Ford Motor Co.*, 321 Mich 469, we affirmed an award to a claimant totally disabled by dust disease. The fact that he had been discharged for striking a foreman during the course of an argument over his refusal to do work for which he felt physically inadequate did not enter into the decision as no question was raised concerning the reason for discharge.

A case not quite in point, but somewhat analogous to the instant one is *Pigue* v. *General Motors Corp.*, 317 Mich 311. The claimant was disabled from performing his former work as a laborer and was given favored clerical employment at earnings equal to

or greater than those received on the date of injury. The union to which he belonged went on a prolonged strike, and the claimant applied for workmen's compensation for this period. We held that he was not entitled to compensation as his employment ceased solely through his voluntary refusal, in concert with the other union members, to work under the terms and conditions that had existed prior to the strike; that his unemployment was not occasioned by incapacity due to his accidental injury or by overt acts on the part of his employer.

It is the duty of a disabled employee to co-operate not only by accepting tendered favored employment which he is physically able to perform (*Kolenko* v. *United States Rubber Products, Inc.,* 285 Mich 159), but also by refraining from criminal conduct destructive to the morale of his fellow employees and his employer's business. Where he engages in criminal gambling activities while at work and is discharged for that cause, he will not be entitled to compensation for the resultant loss of earnings. His favored employment has ceased through his own volition and turpitude and not by reason of his accidental injury.

In the case at bar, lighter work at earnings equal to or greater than received at the date of injury was made available to plaintiff. It was not through physical inability to perform the work, arbitrary caprice of the employer, or some ordinary cause for dismissal that this employment was terminated. Plaintiff was discharged for gambling activities forbidden by law, which were in no wise in furtherance of the duties of his employment.

The award is set aside, with costs to appellants.

Boyles, C. J., and Reid, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.