TURY v GENERAL MOTORS CORPORATION

1. WORKMEN'S COMPENSATION—FAVORED WORK—WAGE-EARNING CA-
   PACITY—COMMON LABOR.

   Favored work does not establish a wage-earning capacity which
   can defeat a claim for worker's disability compensation; a
   worker may be disabled for compensation purposes because of a
   loss of earning capacity in the entire field of unskilled labor
   even though the worker is not disabled from performing former
   duties with his employer.

2. WORKMEN'S COMPENSATION—PERFORMANCE OF JOB—CAPACITY TO
   EARN—DISABILITY.

   The fact that an injured worker continues to perform his job does
   not establish a capacity to earn where the employee is injured
   but not immediately disabled and with further work the injury
   slowly evolves into a disability.

3. WORKMEN'S COMPENSATION—COURT OF APPEALS—SCOPE OF REVIEW
   —WORKMEN'S COMPENSATION APPEAL BOARD—FACTUAL DETER-
   MINATIONS.

   The Court of Appeals has a limited scope of review of factual
   determinations of the Workmen's Compensation Appeal Board;
   however, the Court is not restricted by the limited scope of
   review where it is apparent that the WCAB neglected to
   temper the medical testimony against prior decisions of the
   Court and that the WCAB's conclusion of fact is premised on
   an incorrect assumption of law; where the WCAB's finding is
   based on an improper standard, the Board's determination
   should be reversed and the matter remanded to the Board for
   findings of fact after application of the correct legal standard.

4. WORKMEN'S COMPENSATION—UNSKILLED WORKER—COMMON LABOR.
   An unskilled worker is entitled to worker's disability compensa-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 82 Am Jur 2d, Workmen's Compensation § 340.
[3, 6] 82 Am Jur 2d, Workmen's Compensation § 631.
[4, 5] 81 Am Jur 2d, Workmen's Compensation § 154.
[7] 81 Am Jur 2d, Workmen's Compensation § 231.

tion benefits if her injuries prevent her from competing within the field of common labor.

5. WORKMEN'S COMPENSATION—FAVORED WORK—WAGE-EARNING CAPACITY—COMMON LABOR—WORDS AND PHRASES—WORK—STATUTES.

Performance of favored work by an injured worker no more establishes wage-earning capacity in common labor if there be several such jobs in the plant performed as well by able-bodied as by injured men than it would if created only to take care of the injured worker's specific, injured condition; the word "work" in the portion of the Worker's Disability Compensation Act defining "disability" is interpreted to mean the entire spectrum of common labor, but excludes favored work as a basis for finding disability or not (MCLA 418.401[a]; MSA 17.237[401][a]).

6. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL BOARD—FACTUAL DETERMINATION—APPEAL AND ERROR.

A factual determination by the Workmen's Compensation Appeal Board should not be disturbed on appeal where the Court of Appeals finds evidence in the record to sustain that determination.

7. WORKMEN'S COMPENSATION—DISCHARGE OF EMPLOYEE—MORAL TURPITUDE—LIABILITY FOR BENEFITS.

A discharge of an employee for reasons less than an act of moral turpitude does not relieve an employer of liability for disability compensation benefits.

Appeal from the Workmen's Compensation Appeal Board. Submitted June 21, 1977, at Detroit. (Docket No. 26873.) Decided January 4, 1978.

Claim by Julie A. Tury against General Motors Corporation, Fisher Body Division, for workmen's compensation. Benefits denied. The Workmen's Compensation Appeal Board affirmed. Claimant appeals by leave granted. Reversed and remanded.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P. C.,* for plaintiff.

*Frazer F. Hilder* and *Willard W. Wallace* (by *E. R. Whinham,* of counsel), for defendant.

Before: D. C. Riley, P. J., and Bashara and P. R. Mahinske,* JJ.

P. R. Mahinske, J. This worker's disability compensation case presents a question of the proper test for disability following a discharge from favored work.

Plaintiff was hired by defendant in 1955. Her initial job consisted of gluing vinyl coverings on auto arm rests, a job which involved stretching the vinyl with her hands. On June 3, 1955, plaintiff felt a pain in her wrist when pulling on a piece of vinyl. After receiving first aid therapy and pain pills, plaintiff saw the company doctor who put her wrist in a cast. Because of her injury, plaintiff was transferred to lighter work, picking up pieces of scrap, which she could perform using only one arm.

In September, 1955, plaintiff was hospitalized for a wrist operation. After a brief period of disability from this operation, plaintiff returned to a job drilling holes in the arm rests for screws. This job caused her pain, however, because the machine jerked. Consequently, plaintiff was transferred back to the scrap job.

After performing the scrap job for eight months to one year, plaintiff began experiencing pain in her left elbow in 1956. Because of this pain, plaintiff transferred to a job sorting and tying scrap vinyl material. According to the testimony of both plaintiff and her supervisor, this job was one of the easier ones at the Livonia Fisher Body plant. However, plaintiff continued to experience worsening pain.

For almost four months in 1959, plaintiff received compensation benefits for chronic epicondylitis (tennis elbow). In addition between 1959 and 1966, plaintiff took approximately two years of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sick leave for reasons not reflected in defendant's records.

On March 13, 1966, defendant fired plaintiff. According to plaintiff's testimony, the reason for her discharge was that she made a false statement against another employee. The parties stipulated that the reason for her termination was not plaintiff's physical condition. After her discharge, plaintiff worked briefly as a telephone solicitor at Montgomery Ward during the Christmas season. Subsequent to this, plaintiff could not find a job within her physical capabilities. She could not do housework because of her elbow. Her brief employment as a governess ended because she was incapable of lifting the smallest child in the family.

Plaintiff filed a petition for compensation benefits and, following a hearing before an administrative law judge, her claim was denied. She appealed to the Workmen's Compensation Appeal Board (WCAB), which affirmed on the basis of failure to give timely notice. This Court reversed the Board's determination on the question of notice and remanded for a ruling as to whether plaintiff incurred a work-related disability (Order No. 24774).

In response to the order of this Court, the Appeal Board rendered a decision on November 18, 1975, with three separate opinions. The "majority" of two found that plaintiff's work after 1956 was "favored work", but that plaintiff was not disabled at the time of her discharge. The concurrence agreed as to the finding of no disability, but found that the date of injury was March 13, 1966. The two dissenting members agreed with the concurring opinion as to the last day of work date of injury but would have found plaintiff disabled because after her original injury she could no longer compete in the field of common labor.

In *Adair v Metropolitan Building Co,* 38 Mich App 393; 196 NW2d 335 (1972), this Court held that even if an employee is not disabled from performing former duties with his employer, he may be disabled for compensation purposes because of a loss of earning capacity in the entire field of unskilled labor. The Supreme Court has ruled that favored work does not establish a wage-earning capacity which can defeat a claim for compensation. *Lynch v Briggs Manufacturing Co,* 329 Mich 168, 172; 45 NW2d 20 (1950). See also *Evans v United States Rubber Co,* 379 Mich 457, 465; 152 NW2d 641 (1967).

The record made below clearly indicates that plaintiff did favored work for 11 years after her initial injury which necessitated surgical intervention. Plaintiff testified that while she performed this work she experienced almost constant pain. Both medical experts testified below that there was indication of post-1956 aggravation of plaintiff's elbow condition.

In the face of the above record and findings it appears that the conclusion reached by the majority opinion of the WCAB is a misapplication of the law as interpreted by the courts. This Court has ruled that if an employee is injured but not immediately disabled, and with further work the injury slowly evolves into a disability, the fact that the worker continues to perform his job does not establish a capacity to earn. *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217, 221; 210 NW2d 360 (1973).

Plaintiff's documented evidence of work loss substantiates her unrebutted claim of continuing pain in her employment. Since the majority of the WCAB found plaintiff not entitled to benefits, it is apparent that they neglected to temper the medi-

cal testimony against prior decisions of this Court, and that their conclusion of fact is premised on an incorrect assumption of law. Therefore, this Court is not restricted by the limited scope of review of factual determinations of the WCAB. *Medacco, supra, Vanderbee v Knape & Vogt Manufacturing Co*, 48 Mich App 488, 490; 210 NW2d 801 (1973), *Moore v Gundelfinger*, 56 Mich App 73, 77–78; 223 NW2d 643 (1974).

The WCAB and defendant rely upon the theory that there can be no disability since the record supports a finding that plaintiff could still do the favored, light work which she did for a long period of time after initial injury. Plaintiff does not claim she was injured by the favored work she did subsequent to her initial injury. Plaintiff merely claims that the favored work aggravated her initial injury. The uncontradicted evidence shows that plaintiff could no longer perform the job being done when she was first injured. Dr. Carpenter found no disability in performing the light work, but his further testimony suggests that plaintiff would be disabled from doing the nonlight work job she had at the time of the original injury. Dr. Lipton, the other doctor who testified below, found that plaintiff was disabled in the field of common labor generally.

This Court has recognized that an unskilled worker is entitled to compensation benefits if her injuries prevent her from competing within the field of common labor. See *Medacco* and *Adair, supra.* In *Adair,* the Court quoted with approval the Appeal Board's ruling:

" 'at the time of plaintiff's injury he was employed in the field of unskilled labor. This is a field of labor normally referred to as common labor requiring no particular skill to perform and the field encompasses

the whole spectrum of unskilled work. A common laborer's right to receive compensation is not solely contingent upon his inability to perform a specific unskilled job to which he may have been assigned at the time of his injury but it is dependent upon his inability to compete with others in the general field of labor where his injury occurred.' " *Adair v Metropolitan Bldg Co, supra,* pp 401–402.

The Michigan Supreme Court in *Evans, supra,* was confronted with a like situation where an injured employee was unable to perform the common labor he was performing at the time of injury. He was given lighter work to do. The Court classified this work as "favored work" and stated that such work did not establish a wage-earning capacity in common labor. The Court stated:

"In our opinion, performance of favored work no more establishes wage-earning capacity in common labor if there be several such jobs in the plant performed as well by able-bodied as by injured men than it would if created only to take care of plaintiff's specific, injured condition." *Evans v United States Rubber Co, supra,* p 465.

Clearly, the state of the law is that the word "work" in MCLA 418.401(a); MSA 17.237(401)(a), defining "disability", is interpreted to mean the entire spectrum of common labor, but excludes favored work as a basis for finding a disability or not.

The finding of the WCAB was clearly based upon an improper standard, that is to say, plaintiff's ability to perform the particular favored work job she was last doing with defendant. We, therefore, reverse and remand to the WCAB for findings of fact after application of the proper legal standard.

Plaintiff's date of injury issue was decided in her favor by three members of the Appeal Board. Finding evidence in the record to sustain this factual determination, we do not disturb it on appeal. *Sosnowski v Dandy Hamburger,* 384 Mich 221, 224; 180 NW2d 761 (1970). Plaintiff's date of injury was March 13, 1966.

Plaintiff's "moral turpitude" issue is not discussed herein, inasmuch as plaintiff prevailed on this issue before the WCAB, and defendant concedes that a discharge for reasons less than an act of moral turpitude does not relieve an employer of liability for compensation benefits. We express no opinion on the position taken by another panel of this Court in *Scott v Kalamazoo College,* 77 Mich App 194; 258 NW2d 191 (1977).

Reversed and remanded. Costs to plaintiff.