CALVERT v GENERAL MOTORS CORPORATION

Docket No. 59380. Submitted April 8, 1982, at Lansing.—Decided October 19, 1982. Leave to appeal applied for.

Frances M. Calvert sustained a work-related injury shortly after starting to work for General Motors Corporation. After receiving some workers' compensation benefits, she returned to work at GM doing favored work. Subsequently she was arrested in the plant parking lot for carrying a concealed weapon, which was a violation of the plant rules. She was discharged but was later reinstated. She petitioned for workers' compensation benefits for the period between her discharge and her reinstatement. The hearing referee held that she was entitled to benefits and the Workers' Compensation Appeal Board affirmed the award. GM appealed by leave granted. *Held:*

An employee who has been given favored work because of a work-related injury and who is subsequently discharged because of voluntary acts amounting to "just cause" for discharge is not entitled to workers' compensation benefits. The discharge was for just cause.

Reversed.

M. F. CAVANAGH, P.J., concurred in the result but would hold that an employee who has been given favored work because of a work-related injury and who has been subsequently discharged loses his eligibility for workers' compensation benefits only if there was just cause for his dismissal and just cause for the employer to refuse to pay the benefits.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — FAVORED WORK — DISCHARGE FROM EMPLOYMENT.

An employee who has been given favored work because of a work-related injury and who is subsequently discharged because of voluntary acts amounting to "just cause" for discharge is not entitled to workers' compensation benefits.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 81 Am Jur 2d, Workmen's Compensation § 151.

Concurrence by M. F. Cavanagh, P.J.

2. Workers' Compensation — Favored Work — Discharge From
   Employment.

> An employee who has been given favored work because of a work-related injury and who has been subsequently discharged loses his eligibility for workers' compensation benefits only if there was just cause for his dismissal and just cause for the employer to refuse to pay the benefits.

*McDonald, Fitzgerald & McDonald* (by *John J. Fitzgerald)* for plaintiff.

*O'Rourke, Goldstein, Joseph & Kelly, P.C.* (by *John R. Darin, II),* for defendant.

Before: M. F. Cavanagh, P.J., and R. M. Maher and K. B. Glaser,* JJ.

Per Curiam. Defendant, General Motors Corporation (GM), appeals by leave granted an award of workers' compensation benefits to plaintiff Frances Calvert.

Plaintiff began working for GM on April 22, 1972. Shortly thereafter, she sustained a work-related injury and began to receive workers' compensation benefits. On January 2, 1973, she returned to favored work at a GM production facility.

On September 29, 1977, plaintiff was arrested in the plant parking lot for carrying a concealed weapon. This constituted a violation of the plant rules, and plaintiff was accordingly discharged from her position with GM. Pursuant to the plant grievance procedure, she was reinstated on July 25, 1978.

Plaintiff filed a petition for a hearing on September 20, 1978, claiming benefits for the period between her discharge and her reinstatement. Plain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff was the only witness at the hearing. She testified that she was arrested by a city police officer in the plant parking lot upon her arrival at work. She was carrying an unloaded pistol in her purse. At the time of the arrest, she held a permit to keep the pistol at home. She was later convicted of carrying a concealed weapon in connection with this incident. Defendant introduced into evidence the plant rules and the notice of violation thereof. The plant rules state in part:

"BUICK SHOP RULES

"Working at Buick is, in one sense, like driving an automobile. Rules are needed to avoid trouble. By understanding them you know what is expected of you and also what you can expect of others. By observing them you will enjoy your work more, gain the cooperation of your fellow employees and open the door of opportunity to you. They represent the best way for you, for your fellow employees and for your Company to carry on a satisfactory relationship. Here are a few rules that will help you avoid "collisions" at Buick. Committing any of the following will be grounds for disciplinary action ranging from reprimand to immediate discharge, depending upon the seriousness of the offense in the judgment of Management.

\* \* \*

"RULES RELATING TO ILLEGAL AND FRAUDULENT ACTS

\* \* \*

"35. Possession of weapons on Company premises at any time."

The hearing referee ruled that plaintiff was entitled to the benefits she claimed, on the ground that she was "[n]ot guilty of conduct that would cause the suspension of her compensation. Plaintiff is not guilty of an act of moral turpitude within the meaning of law. Possession of a gun cannot be

construed to be 'base', 'vile' or *'depraved'* conduct."
(Emphasis in original.)

The Workers' Compensation Appeal Board affirmed. We set forth its opinion below:

"The facts of this case are not disputed: Plaintiff had a 1972 wrist injury at work, had surgery, and continued thereafter working on a restricted basis. On September 29, 1977, she was found to have an unloaded gun in her purse in defendant's parking lot, was arrested and eventually convicted of carrying a concealed weapon. She was accordingly discharged for violating a plant rule, and reinstated on July 31, 1978, working uneventfully since.

"The sole issue is whether the act of carrying the concealed weapon (for which she had a permit had she kept it at home) which justified the discharge, also obviates the employer's obligation to pay compensation to a partially disabled employee when work is withdrawn from her.

"The assigned judge ruled plaintiff's conduct was not that of moral turpitude, and that it thus did not bar her receipt of compensation. The defendant appeals. We affirm.

"The question really posed involves the application of 'moral turpitude' as that term arises from *Todd v Hudson Motor Car Co,* 328 Mich 283; 43 NW2d 854 (1950), specifically limited by the court to its facts, and *Garrett v Chrysler Corp,* 337 Mich 192; 59 NW2d 259 (1953). Legal dictionary discussion (Black's) which defendant pejoratively asserts the judge relied upon, says the term is " 'commonly defined as an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man or to society in general * * *' and goes on to construct a line roughly between *malum in se* and *malum prohibitum* acts. However, defendant responds that *Todd's* act of moral turpitude was simply gambling, a *malum prohibitum* act, and that imposition of a difficult standard of moral turpitude places the partially disabled employee effectively beyond normal employer sanctions for misbehav-

ior. Defendant further argues that a concealed weapons conviction is a more serious criminal charge than gambling *(Todd),* or drunkenness *(Garrett).*

"As we view this case, we agree with the judge that carrying an unloaded gun, no matter how illegal, is not a base, vile or depraved act. We note that *Todd, Garrett,* and *DePew v GMC, Chevrolet,* 1979 WCABO 2787 (drug possession in the plant) all involved acts both disruptive of the defendant's operation *and* turpitudinous in nature. It does appear that such consideration was part of the motivation of the Court in *Todd* and *Garrett,* and the board panel in *DePew.*

"In this case the charge was criminally serious, but was not a *malum in se* act, and was not disruptive of the plant operation. That it may well have been grounds for discharge we do not doubt, but we do not believe it to have been a morally turpitudinous act as the *Todd* and *Garrett* Court meant that term.

"Thus we are simply left with a situation where a partially disabled employee did not have work within her capacity provided her, and for such period of time she is entitled to workers' compensation *(Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 [1979])."

On appeal, defendant contends that the appeal board applied an erroneous standard in determining that plaintiff had not committed an act of misconduct sufficiently serious to warrant forfeiture of her right to workers' compensation benefits. Hence, resolution of this case requires this Court to define the proper standard.

Thirty-two years ago, the Supreme Court handed down its decision in *Todd v Hudson Motor Car Co,* 328 Mich 283; 43 NW2d 854 (1950). The *Todd* Court had to decide "whether a partially disabled employee who had been given lighter work is entitled to be awarded compensation after his discharge for gambling". *Todd, supra,* p 284. The Court held that the claimant was not entitled to benefits, and summarized its reasoning as follows:

"It is the duty of a disabled employee to co-operate not only by accepting tendered favored employment which he is physically able to perform (*Kolenko v United States Rubber Products, Inc,* 285 Mich 159 [280 NW 148 (1938)]), but also by refraining from criminal conduct destructive to the morale of his fellow employees and his employer's business. Where he engages in criminal gambling activities while at work and is discharged for that cause, he will not be entitled to compensation for the resultant loss of earnings. His favored employment has ceased through his own volition and turpitude and not by reason of his accidental injury.

"In the case at bar, lighter work at earnings equal to or greater than received at the date of injury was made available to plaintiff. It was not through physical inability to perform the work, arbitrary caprice of the employer, or some ordinary cause of dismissal that this employment was terminated. Plaintiff was discharged for gambling activities forbidden by law, which were in no wise in furtherance of the duties of his employment." *Todd, supra,* p 289.

*Garrett v Chrysler Corp,* 337 Mich 192; 59 NW2d 259 (1953), afforded the Supreme Court another opportunity to address this area of the law. In *Garrett,* the Court held that an employee's discharge for "voluntary drunkenness" justified forfeiture of benefits:

"In the *Todd Case,* we say, at page 289:

" 'Where he [the disabled employee given favored employment] engages in criminal gambling activities while at work and is discharged for that cause, he will not be entitled to compensation for the resultant loss of earnings.'

"We consider that the instant case falls within the reasoning in the *Todd Case.* Plaintiff Garrett was being furnished with suitable employment at no wage loss. His voluntary drunkenness was the reason for his discharge, and not his physical condition resulting from his injuries. His several voluntary acts of drunkenness,

indicating and caused by his moral turpitude, decreasing his efficiency as an employee, detrimental to the morale of his fellow employees and subversive of the employment, were the efficient cause of the termination of his employment." *Garrett, supra,* p 194.

The foregoing passages from *Todd* and *Garrett* have given birth to the notion, reflected in the appeal board's opinion in the instant case, that an employee discharged for misconduct does not forfeit thereby the right to benefits unless the misconduct involves "moral turpitude".

In *Bower v Whitehall Leather Co,* 412 Mich 172, 187-189; 312 NW2d 640 (1981), the Supreme Court recognized the current state of confusion in the law but did not attempt to rectify the situation:

"To determine whether benefits should be awarded in the context of the special facts of these interruption-of-work cases, Michigan courts developed a corollary to the physically capable rule. The basic rule of law that emerges from these cases is that a supervening event causing cessation of an employee's favored work will not terminate his right to benefits as long as the event is not under the employee's control or attributable to him.

"Thus, interruptions of work caused by voluntary actions of the employee, such as abandonment of work to participate in a strike, *Pigue,* failure to return without explanation at the end of a leave of absence, *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966), failure to notify the employer of medical restrictions, *Ayoub v Ford Motor Co,* 101 Mich App 740; 300 NW2d 508 (1980), or discharge because of gambling, *Todd,* or drunkenness, *Garrett v Chrysler Corp,* 337 Mich 192; 59 NW2d 259 (1953), results in a forfeiture of benefits.

"On the other hand, stoppage of favored work due to events the employee cannot control, such as being struck by an automobile, *Lynch,* mandatory retirement, *Evans v United States Rubber Co,* 379 Mich 457; 152

NW2d 641 (1967), or non-work-related health problems, *e.g.,* insanity, *Ward v Heth Brothers,* 212 Mich 180; 180 NW 245 (1920); leprosy, *Sotomayor v Ford Motor Co,* 300 Mich 107; 1 NW2d 472 (1942), or cancer, *Powell,* does not defeat compensation.[8]

---

"[8] * * *

"However, although the general rule in interruption-of-work cases is stated in absolute terms, a number of exceptions should be noted. Unlike *Dunavant,* these exceptions have not been overruled.

"In several cases the courts have granted benefits where the interruption of favored work was, at least arguably, brought about by some voluntary act of the employee. In *Neagle v State Library,* 6 Mich App 148; 148 NW2d 507 (1967), the Court of Appeals upheld an award of benefits to an employee who was discharged from favored employment because of misconduct, specifically for taking long coffee breaks and having the odor of alcohol on his breath. The Court affirmed the decision of the appeal board, which had found that the employer had condoned the worker's behavior for many years and, more importantly, that the claimant's conduct was not so egregious as to require forfeiture of benefits. Similarly, though it reserved judgment on the question whether dismissal for reasons less than moral turpitude or illegality relieves an employer of its compensation liability, another Court of Appeals panel, in *Tury v General Motors Corp,* 80 Mich App 379; 264 NW2d 2 (1978), upheld an award of compensation for an employee discharged from lighter work for making a false statement about a co-worker. But see *Scott v Kalamazoo College,* 77 Mich App 194; 258 NW2d 191 (1977). * * *"

---

We do not believe that the *Todd* or *Garrett* Courts intended to say that an employee would not forfeit his benefits unless he committed an act involving "moral turpitude". We regard all such references to "moral turpitude" as extraneous language—unnecessary to the decisions in those cases.

Moreover, even assuming *arguendo* that "moral turpitude" is the correct test, "moral turpitude"—a legal term of art—must be defined not by reference to legal dictionaries,[1] but by reference to the factual background of the *Todd* and *Garrett* cases. Many distinguished members of the bar would surely be surprised to learn that the Supreme Court had authoritatively declared that consump-

---

[1] See the hearing referee's opinion, *supra.*

tion of alcoholic beverages is an act of "baseness, vileness, or depravity".[2] Moreover, many churches conduct bingo games, and we somehow find ourselves unable to conclude that the Court intended to characterize those churches (or the Legislature, for creating the Michigan State Lottery) as base, vile or depraved.

We agree with much of the reasoning employed by another panel of this Court in *Porter v Ford Motor Co,* 109 Mich App 728, 732; 311 NW2d 458 (1981):

"If defendant can show that plaintiff was fired for violation of company rules which would normally result in termination of a nondisabled employee, and that the violation was not caused by plaintiff's disability, the benefits may properly be denied.

"By establishing the second prong of this test, both parties are protected. The employee is guarded against termination or harassment leading to voluntary termination as a pretext to denial of benefits. The employer is insulated against unacceptable behavior which normally would result in termination of other employees. A disabled employee who can perform that favored work, yet violates company rules to the extent that discharge is justified, in actuality is refusing to perform the favored work and thus creating a bar to compensation."[3]

We hold that an employee who is discharged for just cause is not entitled to workers' compensation benefits. We define "just cause", however, to include only voluntary acts of the employee. Where the event that results in a violation of company rules is beyond the control of the employee—such as disease or accident—the employee shall be entitled to benefits even where the same violation of

[2] Black's Law Dictionary (1968), p 1160.

[3] See, also, *Scott v Kalamazoo College,* 77 Mich App 194; 258 NW2d 191 (1977).

company rules would justify discharge of a nondisabled employee.

The perimeters of the "just cause" standard are best defined through case-by-case adjudication. With respect to the instant case, however, we have no difficulty concluding that plaintiff was discharged for just cause. We find eminently reasonable GM's desire to forbid the carrying of weapons within the confines of the workplace and to effectuate this policy through the sanction of dismissal.[4]

The judgment of the Workers' Compensation Appeal Board is reversed. No costs, a public question being involved.

M. F. CAVANAGH, P.J. *(concurring).* I am in agreement with the majority's conclusion that the "moral turpitude" standard is too restrictive and unreasonable. Based upon the facts of this case, I also concur in the result arrived at by the majority opinion.

I concur separately, however, because I am persuaded that the majority's conclusion that "an employee who is discharged for just cause is not entitled to workers' compensation benefits" is too broad. Although the majority's subsequent limitation of the definition of "just cause" narrows the standard somewhat, I suggest an approach that involves a two-prong analysis: (1) was there just cause for the employee's dismissal, and (2) was there just cause (per the majority's definition of "just cause") for the employer's refusal to pay benefits? Such an analysis is necessary because just cause to dismiss an employee does not necessarily result in just cause to deny the employee workers' compensation benefits.

---

[4] We wish to point out that we also disagree with the appeal board's conclusion that plaintiff's possession of a weapon "was not disruptive of the plant operation".