CHERYL D. SEAGRAVES, PLAINTIFF-EMPLOYEE, v. THE AUSTIN COMPANY OF GREENSBORO, DEFENDANT-EMPLOYER, (SELF-INSURED KEY RISK MANAGEMENT SERVICES)

No. COA95-853

(Filed 16 July 1996)

**Workers' Compensation § 297 (NCI4th)— compensable injury—light duty employment—discharge for misconduct—effect on benefits**

Where an employee, who has sustained a compensable injury and has been provided light duty or rehabilitative employment, is terminated from such employment for misconduct unrelated to the compensable injury or other fault on the part of the employee, such termination does not automatically constitute a constructive refusal to accept employment so as to bar the employee from receiving benefits for temporary partial or total disability pursuant to N.C.G.S. § 97-32; rather, the test is whether the employee's loss of or diminution in wages is attributable to the wrongful act resulting in loss of employment, in which case benefits will be barred, or whether such loss or diminution in earning capacity is due to the employee's work related disability, in which case the employee will be entitled to benefits for such disability.

**Am Jur 2d, Workers' Compensation §§ 444, 445.**

Appeal by defendant from the opinion and award entered 17 May 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 March 1996.

*Franklin Smith for plaintiff-appellee.*

*Tuggle Duggins & Meschan, P.A., by Elizabeth G. Grimes and J. Reed Johnston, Jr., for defendant-appellant.*

MARTIN, John C., Judge.

Defendant-employer appeals from an opinion and award of the North Carolina Industrial Commission awarding plaintiff benefits for temporary total disability. The record establishes that in 1992, plaintiff developed bilateral carpal tunnel syndrome and associated right tardy ulnar nerve palsy in connection with her employment as an assembly line worker at defendant-employer's plant in Yadkinville, North Carolina. Plaintiff underwent multiple corrective surgical pro-

cedures during the period from June 1992 until May 1993. Defendant, who was self-insured, accepted liability for plaintiff's occupational disease and plaintiff received benefits for temporary disability.

In July 1993, plaintiff was permitted by her physician to return to light duty work with defendant, and light duty work was provided to her in the form of a non-production job making boxes. On 9 August 1993, however, defendant terminated plaintiff's employment for alleged gross misconduct arising out of an incident in which plaintiff briefly exposed her buttocks to two female co-employees during horseplay at the workplace.

After her termination, plaintiff continued to experience difficulties with her hands and was seen by Dr. Andrew Koman at the Wake Forest University Hand Center in November 1993. On 8 February 1994, Dr. Koman performed additional right carpal tunnel release surgery. Defendant paid plaintiff benefits for temporary total disability from 8 February 1994 until 13 July 1994, when she reached maximum medical improvement. In Dr. Koman's opinion, plaintiff retains ten and twenty percent permanent partial disabilities to her left and right hands, respectively, and is able to engage only in light duty work not requiring repetitive hand motion or lifting in excess of ten pounds. According to plaintiff, she has been unsuccessful in finding other suitable employment since her discharge. Defendant ceased making payments to plaintiff for temporary total disability on 13 July 1994, contending plaintiff's termination for misconduct amounted to a constructive refusal by her to accept suitable light duty work offered her and a forfeiture of her right to compensation under G.S. § 97-32.

Declining to decide whether plaintiff's conduct constituted cause for defendant to terminate her employment, the deputy commissioner found that such conduct was, in any event, not tantamount to a refusal to accept suitable light work. He concluded, in the absence of such light duty work and because she retained permanent partial disabilities in both hands, that plaintiff remained totally disabled and awarded her benefits for temporary total disability from 9 August 1993, the date of her termination by defendant, to 8 February 1994, the date of her surgery, and from 13 July 1994 and continuing for the period of her disability. Defendant appealed to the Full Commission. While the appeal to the Full Commission was pending, defendant moved, pursuant to Rule 701(7) of the Workers' Compensation Rules, for a new hearing to take additional evidence on the issue of plain-

tiff's disability, supported by an affidavit tending to show that plaintiff had been employed at a nursing home from 21 November 1994 to 27 December 1994.

The Full Commission entered its opinion and award finding that defendant had not shown good grounds to take further evidence, adopting the findings made by the deputy commissioner, and awarding plaintiff benefits for temporary total disability from 9 August 1993 and continuing for as long as plaintiff remains totally disabled, subject to a credit for benefits paid from 8 February 1994 to 13 July 1994, and reasonable and necessary medical expenses.

G.S. § 97-32 provides:

> If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.

The primary question presented by this appeal is whether an employee, who is disabled as a result of a compensable injury and is provided with light duty employment by the employer, constructively refuses the light duty work and forfeits workers' compensation benefits for such disability pursuant to the statute upon termination of the employment for fault or misconduct unrelated to the compensable injury. The question is apparently one of first impression in North Carolina.

Courts in other jurisdictions have approached the issue in divergent ways. On one hand, it has been held that a disabled employee who can perform the light duty work provided by his or her employer, yet is fired for conduct that would normally result in the termination of a nondisabled employee and that in no way is connected with the disability, is in actuality refusing to perform the work, and is barred, *ipso facto*, from receiving any further disability benefits. *Calvert v. General Motors Corp., Buick Motor Div.*, 120 Mich. App. 635, 327 N.W.2d 542 (1982). Defendant advocates that we adopt such a rule in North Carolina by holding that plaintiff's discharge for misconduct amounted to an unjustified constructive refusal to work and a forfeiture of benefits under G.S. § 97-32.

In *Calvert*, the disabled employee, who had returned to "favored" work at General Motors after sustaining a work-related injury, was

SEAGROVES v. AUSTIN CO. OF GREENSBORO

[123 N.C. App. 228 (1996)]

discharged for violating a company rule against possession of weapons on company premises. The Workers' Compensation Appeals Board awarded a resumption of compensation on the ground that the employee's act of carrying an unloaded pistol in her purse, while a "criminally serious" act, did not involve moral turpitude and did not disrupt the workplace.

The Michigan Court of Appeals reversed the Board, holding that even though the employee's conduct was not morally turpitudinous, it was preventable misconduct for which any employee would have been discharged. *Id.* at 643, 327 N.W.2d at 546. The Court quoted from its prior decision in *Porter v. Ford Motor Co.*, 109 Mich. App. 728, 732, 311 N.W.2d 458, 460 (1981):

> "If defendant can show that plaintiff was fired for violation of company rules which would normally result in termination of a nondisabled employee, and that the violation was not caused by plaintiff's disability, the benefits may be properly denied.
>
> By establishing the second prong of this test, both parties are protected. The employee is guarded against termination or harassment leading to voluntary termination as a pretext to denial of benefits. The employer is insulated against unacceptable behavior which normally would result in termination of other employees. A disabled employee who can perform that favored work, yet violates company rules to the extent that discharge is justified, in actuality is refusing to perform the favored work and thus creating a bar to compensation . . . [citation omitted]."

Therefore, the Court concluded, plaintiff's conduct in carrying a concealed weapon was "just cause" for the employee's discharge, barring her from receiving further compensation. *Id.* at 643-44, 327 N.W.2d at 546-47.

Courts in other jurisdictions, however, have taken a somewhat different approach and held that an employee's discharge from light duty work for misconduct unrelated to his or her disability does not automatically bar the employee from receiving disability benefits. To these courts, the simple fact of termination for misconduct is not the sole dispositive factor in determining eligibility for benefits.

For example, in *Marsolek v. George A. Hormel Co.*, 438 N.W.2d 922 (Minn. 1989), a disabled employee, who had returned to lighter

SEAGROVES v. AUSTIN CO. OF GREENSBORO

[123 N.C. App. 228 (1996)]

duty "rehabilitation" work after sustaining several different work-related injuries, was discharged when he was videotaped at a picket line during a union strike threatening to damage cars and injure employees attempting to cross the picket line. The employee filed for workers' compensation benefits, including wage loss benefits. The compensation judge determined that the discharge for misconduct was irrelevant and awarded temporary total disability benefits. The Workers' Compensation Court of Appeals reversed the award, and the employee petitioned for writ of certiorari to the Supreme Court of Minnesota.

The Minnesota Supreme Court affirmed in part and reversed in part the order of the Workers' Compensation Court of Appeals, and remanded the case to the compensation judge. Noting that the primary purpose of workers' compensation is to compensate injured workers for wage loss attributable to a work injury, the Court stated:

> [W]e now hold that a justifiable discharge for misconduct suspends an injured employee's right to wage loss benefits; but the suspension of entitlement to loss benefits will be lifted once it has become demonstrable that the employee's work-related disability is the cause of the employee's inability to find or hold new employment. Such a determination should be made upon consideration of the totality of the circumstances including the usual work search "requirements."

*Id.* at 924.

Similarly, in *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542 (Colo. 1995), the employee was terminated for misconduct on the same day that he sustained a work-related injury. He filed a workers' compensation claim seeking an award of temporary total disability benefits, and an administrative judge held the employer liable for temporary total disability benefits under Colorado's workers' compensation act.

On appeal to the Colorado Supreme Court, the employer argued that the employee should not be eligible for temporary total disability benefits because he was terminated for fault. The Court disagreed, holding in effect that "an employee sustaining a work-related injury who is subsequently terminated for fault from the employment out of which the injury arose prior to reaching maximum medical improvement is not automatically barred from temporary total disability benefits." *Id.* at 547. The Court explained, after reviewing the statutory

scheme with regard to an injured employee's right to disability bene-
fits and recognizing that the workers' compensation act, is not, as a
general proposition, based upon principles of fault, that when an
employee suffers a work-related injury and is subsequently termi-
nated from the employment during which the injury occurs, an initial
determination must be made as to whether the termination was for
fault. *Id.* at 548-49. The Court stated that the burden of proving the
employee's termination was for fault is upon the employer, and if the
employer can satisfy this burden, then it is the responsibility of the
employee to establish that his work-related injury contributed to his
subsequent wage loss. *Id.* at 549.

> As long as limitations resulting from an industrial injury con-
> tribute to a claimant's inability to secure employment at pre-
> injury wage levels, compensation benefits are payable for loss of
> earning capacity. If, on the other hand, the injury and its seq-
> uelae play no part in the worker's inability to find suitable
> employment, there is no compensable loss of earning capacity
> . . . . We do not seek to encourage misconduct by seeming to
> reward it [but] we fail to see the wisdom in holding that an
> employee who loses a post-injury job because of misconduct vol-
> untarily forfeits benefits for a loss of earning capacity which,
> depending on the nature and extent of disability, may be quite
> profound . . . [citations omitted].

*Id.* at 548. The Court remanded the case to the administrative judge
since no determination had been made with respect to whether the
employee was terminated for fault or whether his injury contributed
in part to his subsequent wage loss. *Id.*

We believe the latter approach, as opposed to that advocated by
defendant, more closely comports with the underlying purpose of
North Carolina's Workers' Compensation Act to provide compensa-
tion to workers whose earning capacity is diminished or destroyed by
injury arising from their employment, *Branham v. Panel Co.*, 223
N.C. 233, 25 S.E.2d 865 (1943), and the liberal construction which has
long been accorded its provisions. *Thomas v. Gas Co.*, 218 N.C. 429,
11 S.E.2d 297 (1940). Accordingly, we hold that where an employee,
who has sustained a compensable injury and has been provided light
duty or rehabilitative employment, is terminated from such employ-
ment for misconduct or other fault on the part of the employee, such
termination does not automatically constitute a constructive refusal
to accept employment so as to bar the employee from receiving ben-

efits for temporary partial or total disability. Rather, the test is whether the employee's loss of, or diminution in, wages is attributable to the wrongful act resulting in loss of employment, in which case benefits will be barred, or whether such loss or diminution in earning capacity is due to the employee's work-related disability, in which case the employee will be entitled to benefits for such disability. Therefore, in such cases the employer must first show that the employee was terminated for misconduct or fault, unrelated to the compensable injury, for which a nondisabled employee would ordinarily have been terminated. If the employer makes such a showing, the employee's misconduct will be deemed to constitute a constructive refusal to perform the work provided and consequent forfeiture of benefits for lost earnings, unless the employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability. The application of this rule will, we believe, best achieve fairness to all parties by assuring that an injured employee is awarded benefits for wage loss which is clearly attributable to his or her job-related disability, while protecting employers from liability to employees who engage in intentional, unacceptable conduct while employed in rehabilitative or light duty settings.

In the present case, the Industrial Commission declined to decide the threshold question of whether plaintiff's conduct amounted to misconduct which would have ordinarily resulted in defendant's termination of a nondisabled employee. Moreover, although finding that plaintiff had attempted, prior to her 8 February 1994 surgery, to locate other employment, the Commission made no determination as to plaintiff's ability, after reaching maximum medical improvement on 13 July 1994, to hold employment of any kind and to earn wages, and if she is unable to do so, whether such inability is due to her work-related occupational disease. Thus, we must reverse the Commission's opinion and award and remand this case to the Commission for a determination of these issues and an award in accordance with the rules set forth in this opinion.

In light of our decision, we need not discuss defendant's remaining assignments of error relating to the Commission's refusal to receive additional evidence with respect to whether plaintiff had, in fact, been employed during the period for which she claimed entitlement to benefits for temporary total disability. Evidence with respect to plaintiff's ability to hold employment, and the extent thereof, is

clearly relevant to the issues which we have remanded for the Commission's consideration.

Reversed and remanded.

Chief Judge ARNOLD and Judge SMITH concur.