Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES in part and AFFIRMS in part the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the subject matter.
2. All the parties have been correctly designated, and there is no question as to misjoinder or non-joinder of the parties.
3. Plaintiff suffered an injury to his back on November 27, 1989, while employed by the defendant-employer. Plaintiff's injury occurred within the course and scope of his employment with the defendant-employer.
4. Plaintiff received temporary total disability compensation from November 28, 1989 to December 26, 1989, from December 31, 1989 to January 31, 1990, and from April 26, 1990 to July 25, 1990.
5. Plaintiff was out of work from November 28, 1989 to December 26, 1989, and from December 31, 1989 to January 31, 1990.
6. At the time of the hearing, plaintiff had been out of work continuously since April 26, 1990.
7. At the hearing, the parties stipulated to the admission of all relevant medical records, which were marked as Stipulated Exhibits 1 and 2, and copies of the check stubs documenting defendant's payments of temporary total disability compensation, which were marked as Stipulated Exhibit 3, were admitted into evidence.
8. At the time of his injury, plaintiff was employed by the defendant-employer as a Meat Market Manager at one of its stores in Winston-Salem, North Carolina. His weekly salary in that position was $465.72, yielding a compensation rate of $310.50.
 *********** EVIDENTIARY RULINGS
Plaintiff objects to any use of Dr. Kramer's deposition of October 10, 1995 since his conclusions were based only on one visit for one hour, six years after the accident. Plaintiff's objection is overruled. The objections appearing in the deposition of Dr. Kramer are ruled upon in accordance with the applicable provisions of the law.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission modifies the findings of fact by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of his injury on November 27, 1989, plaintiff was divorced, had two minor daughters and was forty-one years of age. Plaintiff quit high school in the tenth grade, and at the age of seventeen enlisted in the Marines. Plaintiff completed his GED while in service. While stationed in Vietnam, plaintiff's unit was involved in continuous fighting for approximately 17 to 18 days in and around Da Nang and Khe Sanh where 155 Marines had been killed and 425 had been wounded. Plaintiff served as a unit clerk which required him to properly identify dead soldiers, many times after the decaying process had already begun.
2. Plaintiff worked for defendant-employer as a meat cutter and as manager of the meat department for two years prior to his on-the-job injury. At all relevant times herein an employee/employer relationship existed between plaintiff and defendant-employer and defendant-employer regularly employed three or more employees.
3. The defendant-employer was a duly qualified self-insured with Alexis, Inc. as the servicing agent.
4. On November 27, 1989, plaintiff suffered a compensable back injury during the course and scope of his employment. While unloading a supply truck, plaintiff lifted a box of pork loins to put on a shelf and felt something "pop" in his back. Plaintiff rested the box on his shoulder to help relieve the pain, and he then lifted the box onto a higher shelf. Approximately one hour later, his back began hurting again, and he reported the back injury to his supervisor.
5. Plaintiff suffered a lumbosacral strain as a result of his injury by accident on November 27, 1989.
6. Plaintiff went to PrimeCare for his initial treatment and was excused from work from November 28, 1989 through December 26, 1989 by Dr. Theo Powell. On December 3, 1989, plaintiff's pain was worsening, and Dr. Larson arranged physical therapy for him. Plaintiff returned to work approximately December 27, 1989, but plaintiff was unable to perform his duties. Dr. Larson referred him to Dr. Dye, an orthopaedist with Guilford Orthopaedic and Sports Medicine Center.
7. Dr. Dye excused plaintiff from work from December 31, 1989 to January 31, 1990. On January 11, 1990, plaintiff had a negative CT scan of his lumbar spine. Plaintiff was to participate in physical therapy three times a week and to remain out of work at this time.
8. Plaintiff returned to Dr. Dye on January 25, 1990. Plaintiff had full range of motion of his lumbar spine. Dr. Dye gave him a prescription for a weight lifter's belt to protect his lumbar spine and information on getting a TENS unit to decrease his pain. Dr. Dye released plaintiff to return to work without restrictions effective February 1, 1990 and told plaintiff to return for a recheck in three weeks.
9. Plaintiff returned to his job as a meat market manager with defendant on February 1, 1990. On February 20, 1990, he went for a recheck with Dr. Dye. At this time, plaintiff was making slow, steady improvement. Plaintiff's back was much improved, and he was able to do his regular duties without significant complaints. The weight lifter's belt and TENS unit were very helpful to him in supporting his lumbar spine and decreasing his pain while working. Plaintiff was able to perform his job as meat market manager without restrictions from February 1, 1990 to April 26, 1990.
10. Plaintiff worked for defendant at his regular job at his pre-injury rate of pay from February 1, 1990 through April 26, 1990 when he was fired for working off the clock. Plaintiff was unloading a truck of frozen meats alone when his supervisor observed him working off the clock. Defendant-employer's policy stated that an employee would be fired if the employee worked off the clock on three occasions. Plaintiff had two prior warnings for working off the clock in August and November of 1989. As a result of working off of the clock for the third time on April 26, 1990, plaintiff was fired. This termination of plaintiff's employment was consistent with the treatment that fifteen to sixteen employees, without on-the-job injuries, had received when caught in a third violation of the company's policy regarding working off of the clock. There is no evidence that the incident for which plaintiff was terminated was a result of his injury on November 27, 1989.
11. Plaintiff reported to Dr. Dye on April 26, 1990, the same day he was fired for working off the clock. Plaintiff remained under the care of Dr. Dye between April 26, 1990 and July 26, 1990 and was referred to Dr. Randy Kritzer, a neurosurgeon, on June 12, 1990. During this time, plaintiff had normal x-rays of his back, a normal MRI of the lumbar spine, and a normal examination with no evidence of degenerative changes or herniation of cervical disks or lumbar disks. Plaintiff also had blood work done to rule out the possibility that arthritis and low back pain were causing his problems. The results of the blood test were negative on both accounts. Dr. Dye released plaintiff from his care on July 26, 1990 with physical restrictions of no heavy lifting. Plaintiff's symptoms were tension and stress related; therefore, there was nothing Dr. Dye could offer orthopaedically to plaintiff.
12. Plaintiff was evaluated by Dr. Robert Pruner at Roanoke Orthopaedic Center for an Independent Medical Evaluation (IME) on July 5, 1991. Plaintiff had full range of motion of his neck and his neurological status, including reflexes, sensation and motor function, were intact in both upper extremities with no evidence of any vascular impairment.
13. None of the orthopaedists who examined plaintiff recommended surgery for his lumbosacral strain.
14. Prior to his injury on November 27, 1989, plaintiff had pre-existing psychological disorders. As early as September 2, 1987, plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD) when he reported to the Salem VA Medical Center (VAMC). Plaintiff had PTSD from his service in Vietnam and had a congenital personality disorder. Plaintiff was treated for these pre-existing psychological disorders at the Salem VAMC. The medical evidence is insufficient to show that plaintiff's back injury caused or aggravated either of these psychological disorders.
15. On February 5, 1995, plaintiff was evaluated by Dr. Stephen I. Kramer, of the Bowman Gray School of Medicine, for an IME. Plaintiff's pre-existing psychological disorders were confirmed in Dr. Kramer's evaluation of plaintiff.
16. Following his termination on July 26, 1990, plaintiff did not make reasonable efforts to obtain employment.
17. On July 5, 1991, plaintiff had reached maximum medical improvement from his November 27, 1989 back injury. There is no evidence of record that plaintiff sustained any permanent impairment as a result of his injury by accident on November 27, 1989.
 ***********
The foregoing stipulations and findings of fact engender the following additional:
 CONCLUSIONS OF LAW
1. On November 27, 1989, plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2 (6).
2. The defendant-employer paid plaintiff temporary total disability compensation from November 28, 1989 to December 26, 1989, from December 31, 1989 to January 31, 1990, and from April 26, 1990 to July 25, 1990.
3. Plaintiff's inability to earn wages after April 26, 1990 was due to his termination for violating the company policy of defendant-employer which was not related to his injury.
4. Plaintiff failed to make reasonable efforts to obtain employment after his termination. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228 (1996).
5. Plaintiff's pre-existing psychiatric disorders were not causally related to or materially aggravated by his back injury.
6. Plaintiff is not entitled to any additional indemnity disability compensation. N.C. Gen. Stat. § 97-32.
7. Plaintiff is entitled to payment of all medical expenses incurred as a result of his injury on November 27, 1989 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for any additional temporary total disability or permanent partial disability compensation must be, and the same is hereby, DENIED.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his injury of November 27, 1989, for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or tend to lessen the period of disability.
3. Each side shall bear its own costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ MARGARET MORGAN DEPUTY COMMISSIONER
DISSENTING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
BSB:jth