The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for an award of permanent partial disability compensation to plaintiff and some other slight modifications.
Plaintiff's motion to reopen the record to take additional vocational evidence is DENIED.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At all times relevant hereto, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant hereto, an employer/employee relationship existed between plaintiff and defendant.
3. As of March 23rd, 1992, the defendant was a duly qualified self-insured.
4. Plaintiff's average weekly wage was $446.00, yielding a compensation rate of $297.33.
5. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on March 23, 1992.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years old.
2. Prior to the date of his injury by accident, plaintiff had been employed with defendant for a period of approximately 20 years as a machine operator and a heavy equipment operator.
3. On March 23, 1992, plaintiff sustained an injury by accident when he fell on some wet grass and injured his back.
4. Defendant accepted plaintiff's claim as compensable, and plaintiff was paid compensation for partial and total disability by defendant through December 30, 1993.
5. Following his injury by accident, plaintiff came under the care of Dr. P.E. Brown of Hickory, North Carolina. Dr. Brown first saw plaintiff while he was hospitalized at Frye Regional Medical Center in late August of 1992. At that time he had severe degenerative disc disease at L4-5 and L5-S1, with lateral spinal stenosis and segmental instability. He was also diagnosed with chronic alcoholism, pneumonia, and hypertension. Plaintiff had a prior history of two lumbar discectomies and decompression, the first in 1986, and the second in 1987.
6. Dr. Sims performed a lumbosacral fusion from the L4 to the S1 disc levels on August 27, 1992.
7. Following surgery, plaintiff enrolled in a work hardening program at the direction of Dr. Sims. A functional capacity evaluation was performed at the Work Recovery Center in Hickory on August 19, 1993, which revealed that plaintiff had demonstrated the ability to do, safely, a medium level of work. Based on this, plaintiff was released by Dr. Brown to light-duty work, and plaintiff was provided a position as a meter reader by defendant. The meter reading position was the lightest duty available with defendant. Prior to releasing plaintiff to return to the meter reading position, Dr. Brown was provided with a written job description and he specifically approved the meter reader position for plaintiff. In addition, Dr. Andrea Stutesman with the Work Recovery Center also approved the meter reader job for plaintiff.
8. The position of meter reader required plaintiff to stand on his feet for approximately one hour per day, to sit in a truck while driving for approximately 3 hours per day, and to walk on normally level ground for 4 hours per day. The position involved occasional kneeling, occasional squatting, and frequent bending and stooping, but did not involve any twisting, crouching, or crawling. Dr. Brown was provided with a specific description of the physical requirements of the job at the time he approved it for plaintiff.
9. In December of 1993, plaintiff returned to the meter reading job, first on a part-time basis, and later on a full-time basis, at which time he was capable of working and had regained wage earning capacity.
10. Plaintiff continued to work at this position through March 29, 1994, at which time he requested some time off to get himself "straightened out." The district manager observed that plaintiff looked ill, and that there was a possibility that alcohol was on his breath at that time. Plaintiff has a history of chronic alcoholism, which was known by defendant.
11. Plaintiff was ultimately discharged by defendant after he failed to return to work and did not call in after the days he had been allowed to take off had expired. Pursuant to the terms of the employer's "Disciplinary Procedures," an employee is subject to immediate termination for failing to report to work without contacting the supervisor for a period of three consecutive work days. Plaintiff's last day of work for defendant was March 23, 1994.
12. As a result of his injury by accident of March 23, 1992 and resulting lumbar fusion surgery, plaintiff has a 20% permanent functional impairment to his back.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As of the time plaintiff returned to work full time to a job that was within his physical restrictions and which had been approved by his treating physician, he was no longer disabled and had regained his capacity to earn wages equal to or greater than those he earned at the time of his compensable injury. N.C. Gen. Stat. 97-2 (9), 97-29.
2. Following his discharge from employment on March 23, 1994, plaintiff's loss of wages is attributable to his violation of the employer's "Disciplinary Procedures," and not due to his work-related injury. His termination was an offense for which any nondisabled employee would ordinarily be terminated. Plaintiff's conduct constituted a constructive refusal to perform the work provided. N.C. Gen. Stat. 97-32; Seagroves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. Plaintiff has failed to sustain his burden of proving that his inability to find or hold other employment is due to any work-related disability.
4. Plaintiff is not entitled to receive any further compensation for temporary total disability beyond March 29, 1994.
5. Plaintiff is entitled to compensation at the rate of $297.33 per week for 60 weeks for the 20% permanent partial disability he sustained to his back as a result of the compensable injury by accident. N.C.G.S. 97-31 (23).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff compensation at the rate of $297.33 per week for 60 weeks for the 20% permanent partial disability he sustained to his back as a result of the compensable injury by accident. To the extent that this amount has accrued, it shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved in paragraph 3 of this Award.
2. Plaintiff's claim for additional temporary total disability benefits must be, and hereby is, DENIED.
3. At this time a reasonable attorney's fee in the amount of 25% of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the same award and forwarded directly thereto. For the balance of his fee defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
4. Defendant shall pay the costs of this appeal.
This is the _______ day of December, 1996.
 S/ ___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ DIANNE C. SELLERS COMMISSIONER