***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with some minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. On March 17, 1999, the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer.
3. Plaintiff's average weekly wage as determined by the Form 22 Wage Chart is $358.68, which yields a compensation rate of $239.13 per week.
4. Plaintiff contends that she sustained an injury to her lower back, hip and leg on or about March 17, 1999.
5. On March 17, 1999, Industrial Indemnity Insurance was the carrier on the risk.
6. A set of plaintiff's medical records, marked as Stipulated Exhibit Number One, was admitted into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-five years old. She spoke little English and had previously worked in food preparation and production work.
2. Prior to her injury, defendant-employer employed plaintiff for approximately three years. Defendant-employer manufactured silk flower arrangements. Plaintiff worked as a basket fabricator.
3. On March 17, 1999, around nine o'clock in the morning, plaintiff was working as a basket fabricator. As part of her usual duties, she lifted a box of materials from the conveyor belt. Plaintiff then experienced pain in her left hip. She told her supervisor that she hurt her left hip. Plaintiff continued to work until after three o'clock when her husband picked her up from work.
4. On that same date, plaintiff presented to PrimeCare with complaints of left leg and hip pain. X-rays of her left hip and lumbosacral spine were negative. Plaintiff was diagnosed with a hip strain, prescribed medication, and excused from work until March 19, 1999.
5. On March 19, 1999 plaintiff returned to PrimeCare and continued to report left hip pain. She was excused from work until March 23, 1999. On that date, plaintiff was tender in the left lumbosacral spine down through her left hip and outer thigh. Plaintiff was eventually excused from work through April 12, 1999, when she was referred to an orthopedist.
6. On April 12, 1999 plaintiff was seen by Dr. David V. Janeway, who diagnosed a lumbosacral strain, sciatica, and troch bursitis on the left. He prescribed physical therapy and a steroid dosepak and permitted plaintiff to return to sedentary work on April 13, 1999. Plaintiff was to follow up within four weeks, but she never returned to see Dr. Janeway.
7. On April 13 1999 plaintiff returned to work as a basket fabricator with the use of a stool. She worked until July 28, 1999, when she was terminated for excessive absenteeism after accruing eight points.
8. Defendant-employer terminates employees if they receive eight points for unexcused absences within a year. Prior to plaintiff's injury, she had already accrued seven points. Defendant-employer assessed no points for plaintiff's medical appointments or time out of work after her injury. Plaintiff recalled being warned by her supervisor one time about her accrued points prior to her injury.
9. Defendant-employer terminated plaintiff's employment for violation of a policy for which it would have terminated a non-disabled employee.
10. On June 1, 1999 plaintiff began treatment by Dr. Prakash Khot, who also diagnosed an acute lumbosacral sprain. Dr. Khot reported that plaintiff continued to work throughout the treatment he provided and that her injury improved. However, plaintiff missed several scheduled appointments, as a result of which she was discharged from his care in August of 1999.
11. Plaintiff has not returned to any form of employment or looked for work since her termination on July 28, 1999. There is insufficient evidence of record to prove by the greater weight that plaintiff's loss of earning capacity after her termination is due to her work-related injury.
12. At the time of his deposition on July 5, 2000, Dr. Khot indicated that he would not expect plaintiff to have been out of work for one year as a result of the lumbar strain he diagnosed and treated. In his deposition Dr. Kip Leroy Larson at PrimeCare was likewise surprised that plaintiff had been out of work for approximately one year. Dr. Larson further agreed that the fact that plaintiff was capable of returning to work as early as April 13, 1999 seemed to be inconsistent with time out of work for approximately one year.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 17, 1999 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury on March 17, 1999, plaintiff is entitled to payment of temporary total disability compensation at the rate of $239.13 per week beginning March 18, 1999 and continuing until April 12, 1999, when plaintiff returned to work at modified duty earning the same average weekly wage. N.C. Gen. Stat. § 97-29.
3. Plaintiff's termination from employment with defendant-employer is attributable to plaintiff's misconduct and therefore constitutes a constructive refusal to perform the work provided. Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). Because plaintiff failed to prove by the greater weight of the evidence that her inability to find or hold other employment after the termination is due to any work-related disability, she is not entitled to any further payment of disability compensation. Id.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $239.13 per week beginning March 18, 1999, and continuing until April 12, 1999. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability.
3. The issue of whether plaintiff is entitled to any permanent partial disability is RESERVED for decision pending further medical evaluation and treatment. In the event the parties are unable to agree on a rating, either party may request a hearing by filing a Form 33 Request for Hearing.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's counsel. Any amount that has accrued shall be deducted from the award and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs of this proceeding.
This the ___ day of October, 2001.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________________________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb