***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as a matter of law, which is entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. An Employer/Employee relationship as defined by N.C.G.S. §97-2(2) existed between the parties at the time of the injury.
4. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
 ***********
Based on the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing, plaintiff was a 41 year old woman. Plaintiff has three children. Plaintiff completed high school and was in college for two years. In February of 2000, plaintiff began working for Care Focus as a certified nursing assistant (CNA). Mary Parker was plaintiff's supervisor. Plaintiff went to patients' homes to care for them as part of her job duties.
2. Plaintiff testified that she slipped and fell at the house of Bertha Graddy on July 14, 2000. Plaintiff testified that she fell on her "posterior". Plaintiff went to the emergency room and was diagnosed with a left ankle sprain.
3. Plaintiff was initially seen at Kasselt Bone and Joint Center by Dr. Max R. Kasselt on July 18, 2000. Plaintiff was diagnosed with a Grade III left ankle sprain. Plaintiff was given work restrictions of, "Sitting job only with foot elevate[d] higher than the hip." Defendant-employer could not accommodate these restrictions.
4. Plaintiff's claim was accepted by a Form 60 Employer's Admission of Employee's Right to Compensation, dated July 27, 2000. The Form 60 showed plaintiff's average weekly wage as $96.95 per week, yielding a compensation rate of $64.64. Defendants paid indemnity benefits while plaintiff was out of work.
5. Plaintiff continued to treat with Dr. Kasselt for the left ankle sprain. Dr. Kasselt never mentions or notes any complaints other than left ankle complaints from plaintiff.
6. Plaintiff was released to return to regular duty work on October 12, 2000 by Dr. Kasselt. Plaintiff returned to work with defendant-employer at the same wages plaintiff earned prior to her injury. A Form 28 Return to Work Report, dated October 13, 2000, was filed by defendants.
7. Plaintiff followed-up with Dr. Kasselt on January 22, 2001. Plaintiff still had some residual subjective complaints and slightly restricted subtalar range of motion. Radiographs of plaintiff's ankle showed no abnormality.
8. Dr. Kasselt examined plaintiff on July 26, 2001. Dr. Kasselt was of the opinion that plaintiff had reached maximum medical improvement. Dr. Kasselt was of the opinion that plaintiff had sustained a 0% PPD rating to the left foot.
9. Mary Parker was plaintiff's supervisor with defendant-employer. Ms. Parker testified that plaintiff was given several verbal and written warnings regarding absences and tardiness. Ms. Parker specifically testified about Category I offenses, which result in immediate dismissal, and Category II offenses, which are generally less severe, but may result in immediate termination. Ms. Parker testified that plaintiff received written warnings on March 16, 2001 and July 2, 2001. Plaintiff also received verbal warnings, including on May 23, 2000.
10. Plaintiff was terminated by defendant-employer effective July 26, 2001, although plaintiff was suspended prior to July 26, 2001. Plaintiff's last day of work with defendant-employer was June 29, 2001.
11. Plaintiff's termination was for good cause and was not the result of any work-related injury.
12. Plaintiff returned to Dr. Kasselt on September 12, 2001. Dr. Kasselt noted that plaintiff was complaining of spasm on the left side of body, neck, arm, leg and foot. Dr. Kasselt noted that no further treatment was necessary for plaintiff's left ankle. Dr. Kasselt also noted that plaintiff's left-sided symptoms "are not related to the workevent." Dr. Kasselt also noted that he had no record of any previous neck problem, and even though plaintiff's fiancé questioned whether Dr. Kasselt had left this information out of his medical notes, Dr. Kasselt maintained that if such a complaint had been made to him, he would have treated the condition, and furthermore, that it would have been more financially beneficial for him to do so, rather than leave the condition untreated.
13. Plaintiff was initially treated by Dr. Anthony Breuer for unrelated left neck, arm, and leg pain on August 21, 2001. Plaintiff related a history of left neck, arm and leg pain since July 14, 2000 to Dr. Breuer. However, this is not credible as there is no record of any complaints other than plaintiff's left ankle prior to August 21, 2001, over one year after plaintiff's compensable fall.
14. Dr. Breuer had an MRI scan of plaintiff's cervical spine performed on August 24, 2001. Dr. Breuer noted that the "MRI scan of her cervical spine reveals no abnormality that could explain her symptoms."
15. There is no evidence that any of plaintiff's left side complaints are related to any work-related injury from July 14, 2000. Dr. Kasselt's note on September 12, 2001 specifically states that plaintiff's left-sided complaints are not work related, and that plaintiff's left ankle needs no further treatment, as there is nothing further to treat.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 14, 2000, employee-plaintiff sustained an injury by accident to her left ankle, arising out of and in the course and scope of her employment with employer-defendant. N.C. Gen. Stat. §97-2.
2. Plaintiff was released to return to work with no restrictions by Dr. Kasselt on October 12, 2000. Plaintiff returned to work on October 13, 2000. Plaintiff was paid all indemnity and medical benefits to which she is entitled by defendants. N.C. Gen. Stat. § 97-25, 97-2(6).
3. Plaintiff constructively refused suitable work when plaintiff was terminated for excessive absences and tardiness. Plaintiff was terminated for just cause. Plaintiff's actions constitute a constructive refusal to accept employment and bar her claim for receiving further benefits for her injury by accident. Seagraves v. Austin Company, 123 N.C. App. 228,472 S.E.2d 397 (1996); Williams v. Pee Dee Electric Membership Corp.,130 N.C. App. 298, 502 S.E.2d 645 (1998).
4. There is no evidence that any of plaintiff's left side complaints are related to any work-related injury from July 14, 2000. Therefore, defendants are not responsible for any claim for any injury other than the plaintiff's left ankle. As plaintiff has received all benefits to which she is entitled, and no further treatment is necessary for plaintiff's left ankle, plaintiff is not entitled to any additional workers' compensation benefits. N.C. Gen. Stat. § 97-25, 97-29, 97-31.
5. Plaintiff has not retained any permanent disability as a result of her injury by accident of July 14, 2000. Therefore, plaintiff is not entitled to permanent partial disability benefits pursuant to N.C. Gen. Stat. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim for additional workers' compensation benefits must be, and the same is DENIED.
2. Each side shall bear its own costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
BSB:md