***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employee-employer relationship existed.
2. Realistic/Klaussner Furniture of West End, North Carolina is the employer-defendant and Key Risk is the third party administrator for the self-insured employer on the date of the alleged injury.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged injury by accident.
4. Defendant-employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
5. The North Carolina Industrial Commission has jurisdiction of the parties, and all parties have been properly named in this action.
6. The following documents were stipulated into evidence: (a) medical records; (b) employment records; (c) discovery responses; (d) an unsigned letter dated August 7, 2002 by Mr. Mohr to Mr. Lindler; and (e) Deposition of Dr. John R. Moore taken September 25, 2002.
 ***********
Based upon the foregoing Stipulations and the evidence presented, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty-nine years old, with a high school diploma and two years of community college education. In December 2000 he began working for defendant-employer. Although plaintiff was hired to be a router operator, the company placed him in a different position in the roll-up department. His duties included taking sofa frames off of a conveyor and using a hand truck to push them to another section of the plant.
2. Prior to his employment with defendant-employer, plaintiff had a history of knee problems. He frequently complained of pain and swelling in his knees at work with defendant. He asked his initial supervisor, Charlie Singleton, to transfer him to another job where he did not have to walk on concrete floors all day. Mr. Singleton did not have another a job available for plaintiff, however, and could not transfer him. Due to knee pain, plaintiff occasionally asked Mr. Singleton if he could leave work early, and Mr. Singleton allowed it. Plaintiff also called in to report that he would not be in to work on three occasions between March 5 and May 29, 2001 because of his knee being swollen.
3. Plaintiff alleged that he sustained an injury at work on or about May 25, 2001 when he had to jump out of the way of a forklift and, in the process, struck his right knee on a conveyor. Defendant-employer did not have a forklift, but it did use machines called motorized hand trucks. Plaintiff did not report an injury to his employer on May 25, 2001 or during the several months following the alleged event. Plaintiff was seen in the emergency room at Richmond Memorial Hospital on May 27, 2001 and gave a history of having hit his knee on a metal bar. He did not indicate where the injury occurred. Plaintiff was diagnosed with a contusion. On May 29, 2001, he returned to the emergency room complaining of knee pain from walking at work. The emergency room physician diagnosed him with a knee strain and degenerative joint disease, prescribed medication for him and put an ACE wrap on his knee.
4. In approximately July 2001 Jose Luis Rodriguez became plaintiff's new supervisor. Between his arrival at the plant and September 12, 2001, plaintiff periodically complained to him of knee problems and on several occasions asked to be allowed to leave work early. Due to the seriousness of his complaints, Mr. Rodriguez specifically asked plaintiff if his condition was work-related, and plaintiff said that it was not. On August 27, 2001, plaintiff went to the emergency room and gave a history of having hit his knee on a metal beam at work the previous Friday with pain and swelling beginning on Saturday. He was advised to take Ibuprofen for a knee contusion.
5. Plaintiff continued working in his regular job until September 12, 2001. On that date, he lifted a sofa frame off of the conveyor, placed it lengthwise on a hand truck and was about to push it away when another sofa frame slid off of the conveyor and hit him on the back of his left leg near his hip. Plaintiff was shoved forward and fell onto his knees. The frame on his hand truck then toppled over on him. As a result of the accident, plaintiff immediately noticed a lesion on his left leg, which was bleeding. Mr. Rodriguez sent him to FirstHealth for treatment.
6. Douglas Milroy, a physician's assistant at FirstHealth, examined plaintiff on September 12, 2001. Plaintiff complained of left hip pain and bilateral knee joint pain in addition to the lesion. Plaintiff reported that he had experienced knee pain in the past from walking on concrete floors. The physician's assistant cleaned and dressed plaintiff's wound, prescribed medication for him and gave him work restrictions through September 16, 2001. Plaintiff was not given a return appointment because Mr. Milroy considered the injury to be minor and did not believe that it would require follow-up care. Plaintiff returned to work on September 17 and worked until September 20, 2001 when he left after working two hours without notifying his supervisor that he was leaving. Plaintiff was having knee pain but, instead of returning to FirstHealth for further treatment, he went to the emergency room on September 21, 2001 where he complained of right knee pain. Plaintiff was prescribed medication for a knee contusion. Plaintiff then chose to go to Dr. John R. Moore, an orthopedic surgeon, without referral or authorization from defendant.
7. Dr. Moore examined plaintiff on September 26, 2001. Plaintiff gave a history of falling onto his knees two weeks previously and multiple injuries to his knee. Dr. Moore was of the impression that plaintiff had a contusion that would probably heal without medical intervention. Dr. Moore prescribed anti-inflammatory medication and gave him work restrictions. Defendant would not accept Dr. Moore's work restriction note as he was not plaintiff's authorized treating physician. Plaintiff did not report for work and did not call in to report his absences as required by company policy on 20 September 2001, 21 September 2001 and 24 September 2001 through 28 September 2001. His employment was terminated.
8. At a next follow-up visit with Dr. Moore on 15 October 2001, plaintiff was still complaining of right knee pain. In view of his persistent symptoms, Dr. Moore recommended that he undergo an MRI, which revealed an apparent tear of the medial meniscus as well as degenerative changes of the lateral meniscus and the medial meniscus. Dr. Moore discussed various treatment options with plaintiff, which included surgery. Plaintiff wanted to have the surgery. Because of plaintiff's termination from employment, he no longer had health insurance and defendant refused to pay for surgery. Consequently, plaintiff did not undergo the operation; nor did he receive further follow-up care.
9. Plaintiff is claiming that the knee condition for which Dr. Moore recommended surgery was a proximate result of his injury on 12 September 2001. In addition, he has filed a claim for an injury occurring in May 2001. He admitted in his discovery responses, however, that the symptoms from his May 2001 alleged injury resolved. Plaintiff did not suffer any disability from an injury in May 2001.
10. On 12 September 2001 plaintiff sustained an injury by accident arising out of and in the course of his employment when a sofa frame struck him on his left leg, knocking him down, and then fell on top of him. The incident constituted an unusual occurrence, which interrupted his regular work routine. As a result of the fall, plaintiff sustained a laceration to his left leg and a contusion to his right knee. Based on the greater weight of the evidence, plaintiff did not twist his knee as he alleges. Dr. Moore was of the opinion that plaintiff's meniscus tear could well have been a long-standing problem consistent with his chronic preexisting knee symptoms. Consequently, Dr. Moore was unable to opine that the injury at work probably caused the meniscus tear or that it materially aggravated plaintiff's preexisting knee problems to the point that he required surgery. Plaintiff did not prove that the condition for which Dr. Moore recommended surgery was a proximate result of the 12 September 2001 injury by accident. Plaintiff has also failed to prove by the greater weight of the evidence that he was disabled after 16 September 2001.
11. Plaintiff was unable to work from 13 September through 16 September 2001 as a result of his injury and was thereafter able to perform his regular work duties. He did not prove that he was rendered disabled after 16 September 2001 due to his fall on 12 September 2001. Plaintiff's failure to work after 20 September 2001 constituted an unjustified refusal to accept employment suitable to his capacity. Defendant terminated plaintiff based upon an attendance policy that applied to all employees.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. (I.C. 288571) Plaintiff did not prove that he sustained an injury by accident arising out of and in the course of his employment on or about 25 May 2001. N.C. Gen. Stat. § 97-2(6); Anderson v. Northwestern MotorCompany, 233 N.C. 372 (1951).
2. (I.C. 173444) On 12 September 2001, plaintiff sustained an injury by accident to his knee arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. (I.C. 173444) Since plaintiff's proven disability from his 12 September 2001 injury was less than the seven-day waiting period, he is not entitled to compensation for temporary total disability. N.C. Gen. Stat. § 97-28.
4. (I.C. 173444) Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident but he is not entitled to have defendant provide the surgery recommended by Dr. Moore. The treatment Dr. Moore provided to plaintiff is approved as it was reasonably required to effect a cure, provide relief and lessen his disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. (I.C. 173444) Plaintiff did not prove that the right knee condition for which Dr. Moore recommended surgery was a proximate result of the 12 September 2001 injury by accident because Dr. Moore did not opine that the medial meniscus tear that he found was work-related. N.C. Gen. Stat. § 97-2(6) et seq.; Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980).
6. Plaintiff was terminated for excessive absences based upon an attendance policy that applied to all employees and he thereby constructively refused suitable employment. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. (I.C. 288571) Plaintiff's claim for workers' compensation benefits for an alleged May 25, 2001 injury is hereby DENIED.
2. (I.C. 173444) Defendant shall pay for the medical treatment plaintiff received from FirstHealth and Dr. Moore, including the diagnostic MRI; however, defendant is not obligated to pay for the option of knee surgery recommended by Dr. Moore. Plaintiff's claim for further medical treatment after 15 October 2001 is hereby DENIED.
3. Defendant shall pay the costs.
This the ___ day of November 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER