***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All Parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act as defendant-employer had three or more employees in its employment on or about December 17, 2002.
2. Liberty Mutual Insurance Company was the carrier on the risk for defendant-employer as of December 17, 2002.
3. Plaintiff was employed with defendant-employer on or about December 17, 2002.
4. On December 17, 2002, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she injured her neck and right arm while lifting a tub to fill a machine.
5. Plaintiff's average weekly wage is $522.97, which yields a compensation rate of $348.65.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about December 17, 2002, plaintiff was employed with defendant-employer as an operator on their assembly line. At that time, she sustained a compensable injury by accident to her neck and right arm while she was lifting a tub of parts. Plaintiff was initially seen at Northeast Occupational Medicine on or about January 20, 2003. She was treated conservatively during that period of time. Plaintiff was advised not to use her right arm as a result of her injury. She was diagnosed with a cervical sprain with radiculopathy. Plaintiff continued to follow up at Northeast Occupational Medicine with Dr. Stephen St. Clair. He felt that plaintiff's symptoms were evidence of a right cervical sprain with a possible disc herniation. Dr. St. Clair continued to restrict plaintiff's work.
2. Plaintiff continued to work for defendant-employer and did not miss any time from work as a result of her injury. However, her job duties were switched to the packaging department since plaintiff was only able to perform one-handed work per her doctor's restrictions.
3. On or about February 27, 2003, an incident occurred between plaintiff and Kathy Price, a co-worker, where plaintiff attempted to close the co-worker's blouse. Plaintiff had commented that the co-worker's blouse needed to be buttoned. Following the incident, Kathy Price used vulgar language in the presence of other employees.
4. The following day, Mark Brombacker, the human resource manager for defendant-employer began an investigation of the incident based on the complaint of Kathy Price. Statements were inconsistent as to whether plaintiff actually touched the co-workers' breast. Plaintiff denied at hearing that she touched the co-worker's breast, but stated it was just an attempt to close her blouse.
5. Mark Brombacker testified that defendant-employer has a graduated policy of discipline. This policy includes verbal warnings, written warnings, reprimands and termination. It is within the discretion of the human resource person to determine the severity of the punishment based on the conduct.
6. Prior to her termination plaintiff had no disciplinary action or warnings in her file. She was immediately terminated without verbal warnings, written warnings or reprimands.
7. During his investigation, Mark Brombacker learned from plaintiff that Kathy Price had been falsely accusing plaintiff of being a lesbian.
8. On March 6, 2003, plaintiff was terminated from her employment while still restricted to one-arm duty work.
9. Mr. Brombacker testified that plaintiff's light duty job was working on a packaging line that had a planned reduction in force that was going to occur in April 2003. Plaintiff's light-duty position would not have been available once the reduction in force had occurred.
10. Plaintiff continued to experience problems with her neck and right arm. She continued to follow up with Dr. St. Clair, who prescribed anti-inflammatories and muscle relaxers. An MRI was recommended on her right shoulder. The MRI was performed on or about March 28, 2003, and showed no evidence of internal derangement. Dr. St. Clair continued to recommend that plaintiff proceed with physical therapy for her shoulder. On April 18, 2003, he changed his diagnosis to myofascial pain of her right upper back and released plaintiff from his care at that time.
11. Plaintiff continued to experience problems with her shoulder. She requested a second opinion regarding her condition pursuant to N.C. Gen. Stat. § 97-27. On May 19, 2003, she was seen by Dr. Stephen Furr. Dr. Furr diagnosed plaintiff with a cervical strain and recommended that she be set up for trigger point injections in an attempt to relieve her symptoms. Defendants would not approve this treatment. Dr. Furr last saw plaintiff on June 30, 2003. At that time, he felt that she should be restricted from doing any type of heavy work. Dr. Furr testified that he believed that plaintiff continued to have symptoms and that she might benefit from a pain clinic. However, he noted that he felt that she would probably retain a five-percent (5%) permanent impairment to her spine.
12. Plaintiff attempted to return to work at various jobs. She not only sought employment, she actually found some and tried it but could not work because of the pain. She attempted to return to work as a housekeeper and was unable to do the job due to her pain. Due to her inability to work, she and her husband had to declare bankruptcy in 2003.
13. Because of her compensable injuries, plaintiff has not been able to return to work since defendant-employer fired her.
14. Under Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996), in order to show constructive refusal to work, an employer is required to show that the worker was terminated for misconduct, that the same misconduct would have resulted in the termination of a non-disabled employee, and that the termination was unrelated to the employee's compensable injury. If an employer is able to make this showing, then the burden shifts to the employee to show that his or her inability to find work is due to his or her disability.
15. The evidence in this matter shows that plaintiff was fired on March 6, 2003. However, defendant-employer did not follow its own policy regarding graduated disciplinary action. Plaintiff's conduct was not sufficient to warrant immediate termination, particularly based on the fact that she had no warnings or reprimands in her file at the time she was terminated. There was no sexual misconduct by plaintiff at work. If the attempted buttoning of the blouse constituted sexual misconduct, which the Full Commission finds it was not, no counseling or reassignment of work stations was ever offered to plaintiff.
16. The Full Commission finds that plaintiff has demonstrated that she remains disabled and is unable to find work as a result of her compensable injury. Plaintiff remained on restricted one-arm duty work after her termination for a period of time and has continued to experience symptoms that prevent her from performing regular duty work.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On December 17, 2002, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer wherein she injured her neck and right arm. N.C. Gen. Stat. § 97-2(6).
2. Defendant-employer has failed to show that plaintiff was terminated for misconduct, that the same misconduct would have resulted in the termination of a non-disabled employee, and that the termination was unrelated to her compensable injury. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. Plaintiff was disabled from March 7, 2003, to the present as a result of her continuing symptoms in her neck and shoulder. Plaintiff's disability was continuing at the time of the hearing before the Deputy Commissioner. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney fees set forth below, defendants shall pay to plaintiff temporary total disability benefits at the rate of $348.65 per week from March 7, 2003, to the present and continuing until such time that she returns to work or further Order of the Industrial Commission. The portion of this award that has accrued shall be paid to plaintiff in a lump sum. Thereafter, defendants shall pay to plaintiff weekly compensation of $348.65. Defendants shall pay interest at 8 percent per year from the date of the hearing before the Deputy Commissioner.
2. Defendants shall pay for, or shall reimburse those who paid, all medical treatment necessary to effect a cure, give relief, or lessen the period of disability including the trigger point injections that were previously recommended.
3. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded herein. The portion of such fees that have accrued shall be paid directly to plaintiff's counsel in a lump sum; thereafter, defendants shall pay every fourth check to plaintiff's counsel.
4. Defendants shall pay the costs, including an expert witness fee of $400.00 to Dr. Stephen Furr, if not paid pursuant to prior order.
This 5th day of July 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER