* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Phillips, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. This action and the parties are subject to the North Carolina Worker's Compensation Act.
2. The plaintiff was an employee of Employer at the time of the alleged work-related injury on August 28, 2003.
3. The plaintiff's average weekly wage is $234.48 yielding a compensation rate of $156.32.
4. The date of injury alleged by the plaintiff is August 28, 2003.
5. The plaintiff has been continuously out of work since August 28, 2003.
6. The defendants denied the plaintiff's claim on January 12, 2004.
7. The following medical records may be received into evidence:
a. Cleveland Medical Center, P.A.;
b. Centralina Orthopaedic Sports Medicine;
c. Iredell Memorial Hospital Emergency Department;
 d. Stewart Physical Therapy and Sports Medicine Clinic, Inc.;
e. Carolina Specialty Care, P.A.;
 f. Davis Regional Medical Radiological Interpretation;
g. Statesville Pain Associates; and.
h. Carolina Spine Hand Center, P.A.
8. Additional Submissions:
a. Deposition of Jeffrey Baker, M.D.;
 b. Medical records of Jeffrey Baker, M.D., and James Dreese, M.D.
c. Updated known medical expenses
 d. Memorandum from North Carolina Department of Health and Human Services Third Party Recovery Section.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff sustained injuries to her right wrist, right knee, and lower back by accident arising out of and in the course and scope of her employment with the defendant-employer on August 28, 2003, when she fell from a ladder while cleaning windows. The defendant-employer is a manufacturer of mobile homes.
2. The plaintiff was seen by the defendant-employer's physician, Dr. John F. Barr, on August 28, 2003. Dr. Barr diagnosed the plaintiff as having "sprain of the right wrist, lumbosacral sprain with degenerative disc disease L5/S1, contusion of right knee and right foot." Dr. Barr injected the plaintiff with Toradol and gave her Ibuprofen and Darvocet. He referred her to an orthopedic surgeon, Dr. Furr.
3. The plaintiff was seen by Dr. William S. Furr, an orthopedic surgeon, on August 29, 2003. His provisional diagnosis was contusion of the right wrist, back, and knee. The plaintiff was restricted to minimal light-duty activity with no prolonged standing or prolonged sitting, and was given significant restrictions as far as lifting, pushing, and pulling.
4. The plaintiff was next seen by Dr. Barr on September 2, 2003, when he diagnosed lumbosacral radiculitis radiating down the left leg with left sciatica and right wrist sprain. The plaintiff was given two more injections and was taken out of work until her next visit on September 9, 2003.
5. The defendant-employer's General Manager, Phil Stanley Cummings, testified that the plaintiff was terminated from employment with the defendant-employer on September 6, 2003, for failing to show up for work.
6. The plaintiff was last seen by the defendant-employer's physician, Dr. Barr, on September 3, 2003. Dr. Barr noted that the plaintiff still had severe low back pain, right wrist pain, and severe right knee pain. Dr. Barr reviewed Dr. Furr's recommendation that the plaintiff proceed with an MRI of the right knee to rule out a non-displaced fracture, and a bone scan of the spine and coccyx to make sure there were no acute processes occurring. Dr. Barr kept the plaintiff out of work until she could have her MRI performed with Dr. Furr.
7. Because the defendant-employer's own physician, Dr. Barr, had directed that the plaintiff not work from September 2 through September 9, 2003, the plaintiff was in compliance with his orders when the defendant-employer terminated her employment on September 6, 2003. Thus, the Full Commission finds that the plaintiff was terminated for reasons that a non-injured employee would not be terminated.
8. As of the date of hearing before the Deputy Commissioner, the defendants had not paid any temporary total disability benefits to the plaintiff.
9. The defendants filed a Form 61, Denial of Worker's Compensation, on January 12, 2004.
10. The plaintiff continued treating with Dr. Furr for all three of her injuries.
11. According to Dr. Furr, the plaintiff reached maximum medical improvement with respect to her back on May 11, 2004, and he assigned a permanent partial disability rating of four percent (4%) to her back. The plaintiff had not reached maximum medical improvement with respect to her right wrist and right knee.
12. The plaintiff continued to treat with Dr. Furr for her right wrist and right knee until September 15, 2004, when the plaintiff was referred to Dr. Jeffrey Baker, a hand specialist. At the time of the the plaintiff's last visit to Dr. Furr, his diagnosis of her right wrist was a ligamentous or soft tissue sprain of the wrist, including the possibility of a triangle fibro cartilage tear together with some carpel tunnel systems. Dr. Furr thought the plaintiff may have sustained a sprain to her knee.
13. Dr. Furr opined that all three of the plaintiff's injuries for which he treated her were caused by her injury by accident on August 28, 2003.
14. On October 7, 2004, the plaintiff had her first appointment with Dr. Jeffrey Baker's office for her right wrist. According to the notes from Dr. Baker's office, the MRI result showed possible TFCC tear and a radioulner tear. Dr. Baker injected the plaintiff with Lidocaine. On December 3, 2004, Dr. Baker performed arthroscopic surgery on the plaintiff's right wrist for repair of a TFCC tear. On December 30, 2004, Dr. Baker prescribed physical therapy for the plaintiff's right wrist.
15. On January 12, 2005, the plaintiff saw another orthopedic surgeon, Dr. James Dreese of Miller Orthopedic Clinic. He reviewed an MRI and some radiographic studies. Dr. Dreese's assessment was that the plaintiff had a right knee lateral patellar fixed subluxation and a lateral patellar facet, compression syndrome secondary to a fall at work approximately one and a half years ago. Dr. Dreese recommended a procedure called a lateral retinacular release and a tibial tubercle osteotomy. Dr. Dreese stated that the plaintiff would be 6 to 8 weeks in a hinged knee brace for the first 6 weeks and would not return to full activity until 4 to 6 months post-operatively.
16. As of the date of hearing before the Deputy Commissioner, the plaintiff had not been released to return to normal duty without restrictions by Dr. Furr or any other physician. 17. The Full Commission, in its discretion, finds it appropriate for the defendants to provide the plaintiff with a functional capacity evaluation in order to assess the plaintiff's current work restrictions.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff is entitled to receive temporary total disability benefits at the rate of $156.32 per week from August 29, 2003, and continuing until she returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29. Although the plaintiff did receive a four percent (4%) permanent partial disability rating to her back, the plaintiff is deemed to have selected the greater remedy available to her, which would be benefits pursuant to N.C. Gen. Stat. § 97-29, as opposed to §97-31.
2. The plaintiff is entitled to receive medical treatment that is reasonably related to her injury by accident on August 28, 2003, which is necessary to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2 (19) and97-25.
3. The defendants shall provide the plaintiff with a functional capacity evaluation in order to assess the plaintiff's current work restrictions. N.C. Gen. Stat. § 97-25.
4. The defendants' contention that the plaintiff is not entitled to benefits because she was terminated for reasons that a non-injured employee would also be terminated is not supported by the evidence of record. See Seagraves v. Austin Co. ofGreensboro, 123 N.C.App. 228, 471 S.E. 2d 397 (1996). In the present case, the plaintiff was terminated for not reporting to work when it is clear from the record that the employer's own physician had written the plaintiff out of work. Thus, the plaintiff was terminated for reasons that a non-injured employee would not be terminated. Id.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay to the plaintiff temporary total disability benefits at the rate of $156.32 per week from August 29, 2003, and continuing until she returns to work or until further order of the Commission, subject to the attorney's fee provided herein. The portion of such compensation that has accrued shall be paid to the plaintiff in a lump sum.
2. The defendants shall provide the plaintiff with medical treatment that is reasonably related to her injury by accident on August 28, 2003, which is necessary to effect a cure, provide relief or lessen the period of disability.
3. The defendants shall provide the plaintiff with a functional capacity evaluation in order to assess the plaintiff's current work restrictions.
4. The defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to the plaintiff herein. Fees that are based upon compensation that has accrued shall be paid to the plaintiff's counsel in a lump sum; thereafter, the plaintiff's counsel shall receive every fourth check of compensation due the plaintiff.
5. The defendants shall pay an expert witness fees in the amount of $800.00 to Dr. Furr and $200.00 to Dr. Barr, if not paid by prior order.
6. The defendants shall pay the costs.
This 13th day of January 2006.
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_____________ BUCK LATTIMORE CHAIRMAN