***********
Upon review of the competent evidence of record, including the briefs and oral arguments of the parties, with reference to the errors assigned and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** RULING ON DEFENDANT'S MOTION
Defendant moved, pursuant to Rules 609 and 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, for an Order allowing Defendant to include in the *Page 2 
record additional evidence, including Plaintiff's updated short-term disability records, on the ground that such records are relevant to the appeal of this matter. Plaintiff did not submit a written response or objection to Defendant's Motion. After consideration of the written and oral arguments of Defendant, Defendant's Motion is hereby GRANTED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties on November 1, 2007.
3. Defendant is self-insured, with Corvel Corporation as the third-party administrator.
4. Plaintiff's average weekly wage is $549.81 pursuant to the Form 22, yielding a compensation rate of $366.56.
5. Plaintiff sustained an injury by accident on or about November 1, 2007, with the exact date to be determined by the North Carolina Industrial Commission.
6. On December 21, 2007, Defendant admitted the compensability of Plaintiff's left neck and left shoulder strain injuries via a Form 60.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Executed Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Plaintiff's medical records; *Page 3 
 c. Stipulated Exhibit Three: North Carolina Industrial Commission forms and filings;
 d. Stipulated Exhibit Four: Discovery responses;
 e. Stipulated Exhibit Five: Plaintiff's personnel file.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's work injury on or about November 1, 2007 materially aggravated and/or caused her mental health condition?
2. Whether Plaintiff is entitled to any further workers' compensation and/or salary continuation benefits?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 54 years old, with a date of birth of December 22, 1955. Plaintiff is a life-long resident of Plymouth, North Carolina, and has a high school diploma as well as a two-year degree in business. As of the date of the hearing before the Deputy Commissioner, Plaintiff was a full-time student working toward a bachelor's degree in sociology.
2. Plaintiff's work history prior to working with Defendant included approximately 20 years of secretarial and accounting work for various employers. In May 2004, Plaintiff started working for Defendant as a correctional officer at Tyrrell Prison Work Farm #3070, *Page 4 
which is a minimum-security work farm. She had previously worked for short periods at two other prisons.
3. On November 1, 2007, Plaintiff was working for Defendant as a correctional officer preparing to inspect dormitory rooms and a hallway. While Plaintiff was in the hallway of a dormitory, another employee made an announcement that the canteen was going to open, at which time the inmates stampeded out of their rooms. Plaintiff became pinned up against a wall where she had to hold herself until the rush of inmates passed so that she would not fall down. Plaintiff immediately felt sharp pain in her neck and head going down into her arms bilaterally. Shortly thereafter, Plaintiff reported the incident to Defendant, completed an incident report, and presented to the nurse on duty at the time, who suggested that she go to the hospital. Following the recommendation of the nurse, Plaintiff presented to the emergency department at Washington County Hospital in Plymouth, North Carolina, where she complained of anxiousness and pain in her neck and left shoulder. On December 21, 2007, Defendant admitted the compensability of Plaintiff's November 1, 2007 work injury with respect to her "left neck and left shoulder strain" via a Form 60 and began paying temporary total disability and medical compensation.
4. On November 2, 2007, Plaintiff saw Dr. Reginald Ifeanyi Obi, an internist, who ordered physical therapy for her left shoulder pain and cervical strain and an orthopaedic referral. Dr. Obi also wrote Plaintiff out of work until November 12, 2007.
5. Plaintiff returned to work on November 13, 2007 in a light-duty position. Thereafter, Plaintiff sought additional medical treatment for her neck and continued to undergo physical therapy until January 15, 2008. While working in a light-duty position, Defendant reassigned Plaintiff to Bertie Correctional Institution on January 9, 2008 and then to Pasquotank Correctional Institution on January 14, 2008. *Page 5 
6. On or about January 3, 2008, Plaintiff became aware that Mr. David E. Elliott, the superintendant of Tyrrell Prison Work Farm #3070, instituted a formal complaint for sexual harassment against her. Mr. Elliot alleged that Plaintiff propositioned him for sex at a holiday party approximately two weeks earlier. In addition, Mr. Elliot alleged that Plaintiff called his home and spoke to his wife without his permission.
7. Although Plaintiff testified that she began to have trouble sleeping and bad dreams about the circumstances surrounding her November 1, 2007 work injury on the day after it occurred, the record indicates she did not seek any psychological treatment until January 15, 2008, when she presented to Dr. Celeste Margarita Good, a psychiatrist. Plaintiff reported to Dr. Good that she was having violent thoughts about Mr. Elliott.
8. Prior to working for Defendant, Plaintiff saw Dr. Good sporadically for several years. Dr. Good had been treating Plaintiff in the past for chronic schizoaffective disorder, which involved symptoms of schizophrenia, paranoia, and depression. Plaintiff first began seeing Dr. Good in 1989 following a hospital admission for a psychotic episode, and Plaintiff's last visit with Dr. Good prior to January 15, 2008 was in February 2005. Between February 2005 and January 15, 2008, Plaintiff had been functioning with her schizoaffective disorder reasonably well enough to work full-time as a correctional officer for Defendant.
9. Also on January 15, 2008, Plaintiff presented to Dr. George John Miller, Jr., an orthopaedist, for continued left shoulder and neck complaints. Dr. Miller diagnosed Plaintiff with a neck sprain and left shoulder contusion, which he related to her November 1, 2007 work injury, and carpal tunnel syndrome, which he felt to be unrelated to the work injury. Dr. Miller ordered magnetic resonance imaging (MRI) of Plaintiff's cervical spine to determine whether there was any nerve root compression, and continued her physical therapy and home traction. *Page 6 
10. On January 28, 2008, Plaintiff returned to Dr. Good, at which time she reported that she was depressed, very angry, and having trouble sleeping. At this visit and the previous visit with Dr. Good, Plaintiff discussed the circumstances surrounding her November 1, 2007 work injury. Dr. Good did not provide any further treatment to Plaintiff following this visit.
11. Dr. Good wrote Plaintiff out of work initially for several periods covering January 15, 2008 through January 29, 2008, when Plaintiff was hospitalized. As of the date of the hearing before the Deputy Commissioner, Plaintiff was still an employee of Defendant, although she did not return to work in any employment after January 2008. It is unclear from the record whether Plaintiff received any salary continuation after leaving work in January 2008.
12. On January 29, 2008, Plaintiff presented to Pitt County Memorial Hospital in Greenville, North Carolina making suicidal and homicidal threats. The medical records from this visit indicate that Plaintiff was angry, hostile, and felt as though everyone was ignoring her since her November 1, 2007 work injury.
13. On January 30, 2008, the emergency department staff at Pitt County Memorial Hospital successfully petitioned Plaintiff to be involuntarily committed at Cherry Hospital in Goldsboro, North Carolina based upon their conclusion that she was mentally ill and possibly a danger to herself and/or others. At Cherry Hospital, Dr. Venkata Ramana Chittilla, a psychiatrist, diagnosed Plaintiff with chronic schizophrenia. Dr. Chittilla discharged Plaintiff on February 1, 2008 after she showed improvement and did not exhibit any more aggressive behavior. Dr. Chittilla did not provide any further treatment to Plaintiff following this hospitalization.
14. On February 7, 2008, Plaintiff presented to Dr. Viswanathan Swaminathan, a psychiatrist. Dr. Swaminathan noted that Plaintiff was in a stressed and paranoid state, and that *Page 7 
she reported having psychiatric problems going back to the late 1980s. Plaintiff also reported that she was angry at Mr. Elliot for accusing her of sexual harassment, and discussed her November 1, 2007 work injury. Specifically, Plaintiff stated that although she believed that the inmates probably did not intend to injure her, the incident nonetheless scared her and she had trouble sleeping ever since. Dr. Swaminathan diagnosed Plaintiff with schizophrenia, paranoid type and took her out of work. On a "Voluntary Shared Leave Program — Physician's Certification" form, Dr. Swaminathan opined that the disability for which he was providing treatment to Plaintiff began on December 1, 2007, and he estimated that the total length of her disability would be approximately 52 weeks or more.
15. On February 8, 2008, Plaintiff returned to Dr. Miller, at which time he noted that the cervical MRI he ordered revealed new changes compared to one from 10 years ago, with disc protrusion at the C5-C6 and C6-C7 levels of the spine, which were compressing the right nerve roots to a mild degree. Dr. Miller also noted that Plaintiff's right shoulder symptoms seemed to be worse than her left shoulder symptoms, that she recently had significant suicidal ideation requiring hospitalization, and that she noted the onset of depression with the first of a series of oral steroid packs that she had been taking for her shoulder and neck complaints. Dr. Miller prescribed Darvocet for pain, and took Plaintiff out of work. Dr. Miller continued to see Plaintiff over the next several months and kept her out of work.
16. On May 7, 2008, Dr. Ira May Hardy, II, a neurosurgeon, saw Plaintiff upon referral from Dr. Miller to evaluate whether she was a candidate for spinal surgery. Dr. Hardy ordered a cervical myelogram, which revealed "a lot of cervical spondylosis but no frank intraspinal nerve root impingement [and] disk bulges at C3-C4, C4-C5, C5-C6, and C6-C7." On May 30, 2008, Dr. Hardy opined that Plaintiff was not a surgical candidate with respect to her *Page 8 
cervical complaints, and released her to full-duty work, but with the restriction that she "[s]hould avoid physical confrontations."
17. On July 2, 2008, Plaintiff started receiving short-term disability benefits through a fully employer-funded plan in the amount of $1,227.92 per month. However, Plaintiff testified that the amount she actually received in short-term disability benefits was about $700.00 per month. It would appear from the record that Defendant withheld taxes from Plaintiff's short-term disability benefits.
18. At Plaintiff's office visits with Dr. Swaminathan on June 17, 2008, July 8, 2008, and July 21, 2008, he felt that she could attempt to return to work in a minimum-security prison setting in the short term, but recommended that Plaintiff seek another, less stressful employment setting in the long term.
19. On August 4, 2008, Dr. Swaminathan diagnosed Plaintiff with post-traumatic stress disorder, which he related to the November 1, 2007 work injury. Dr. Swaminathan also sent correspondence to Defendant stating that in Plaintiff's "current clinical condition . . . she is unable to return to any work," and he requested that her workers' compensation benefits be "continued indefinitely at this time."
20. On September 9, 2008, Dr. Miller saw Plaintiff for the last time, and opined that she was at maximum medical improvement with respect to her left shoulder from an orthopaedic standpoint. Dr. Miller released Plaintiff to return to work in a limited capacity, and he recommended a functional capacity evaluation. However, the record does not indicate that this functional capacity evaluation ever occurred.
21. On December 30, 2008, the last date upon which Dr. Swaminathan saw Plaintiff, he noted improvement in Plaintiff's psychiatric symptoms due to ongoing treatment, but that she *Page 9 
was still anxious, fearful, and worried. Dr. Swaminathan filled out a form to extend Plaintiff's short-term disability benefits, noting that "[s]he is still anxious, somewhat fearful, somewhat worried," and had "[s]ome constriction in her affect," and continued to prescribe psychiatric medications for Plaintiff. Dr. Swaminathan did not make any notation regarding returning Plaintiff to any type of employment at this time.
22. Although Defendant admitted the compensability of Plaintiff's November 1, 2007 work injury with respect to her left shoulder and neck, Defendant denied Plaintiff's claim as to depression and anxiety on the Form 60. Plaintiff's post-traumatic stress disorder was diagnosed after Defendant's Form 60, which was filed on December 21, 2007.
23. Dr. Good opined that the type of incident that happened to Plaintiff on November 1, 2007 would trigger her underlying condition and make her violent and upset. When Plaintiff saw Dr. Good on January 15, 2008, she was not on the medications that Dr. Good had been prescribing to manage her psychiatric condition. According to Dr. Good, the fact that Plaintiff was not taking the psychiatric medications prescribed would increase Plaintiff's problems with schizophrenic and depressive symptoms. Dr. Good was also of the opinion that Plaintiff should not have been working at all, was surprised that she had been working for Defendant when Plaintiff presented to her in January 2008, and further opined that Plaintiff could not do any work in social situations due to her underlying schizoaffective disorder. Dr. Good could not say whether Plaintiff's November 1, 2007 work injury aggravated her psychiatric condition, or whether Mr. Elliot's sexual harassment complaint against Plaintiff aggravated her psychiatric condition.
24. Dr. Chittilla was of the opinion that Plaintiff's November 1, 2007 work injury did not aggravate her chronic schizophrenia. However, Dr. Chittilla did state that someone with *Page 10 
chronic schizophrenia would react more severely to a traumatic incident than a person without chronic schizophrenia.
25. Dr. Swaminathan opined, to a reasonable degree of medical certainty, and the Full Commission finds as fact, that Plaintiff's November 1, 2007 work injury "probably aggravated" her pre-existing schizophrenia, to the point that she required further treatment for it. He stated that Plaintiff's psychiatric condition was reasonably stable for some time prior to her November 1, 2007 work injury.
26. Dr. Swaminathan further opined, and the Full Commission finds as fact, that Plaintiff's November 1, 2007 work injury caused her post-traumatic stress disorder.
27. According to Dr. Swaminathan, the sexual harassment allegation made by Mr. Elliot had a great psychological impact on Plaintiff, but the November 1, 2007 work injury also had an impact. He testified that both the schizophrenia and the post-traumatic stress disorder diagnoses involved components of depression and anxiety. Dr. Swaminathan opined that, in Plaintiff's mind, she connected Mr. Elliot's sexual harassment complaint with her workers' compensation claim, as she felt that he lodged the charge in retaliation for her filing the workers' compensation claim. He also opined that Plaintiff's use of the steroid Prednisone, which Dr. Miller prescribed for her neck and shoulder complaints probably also had an impact on her psychiatric condition.
28. Dr. Swaminathan was of the opinion that Plaintiff would continue to need another one to two years of treatment for post-traumatic stress disorder, and that she would need life-long treatment for her underlying schizophrenia. At his deposition, when asked about Plaintiff's ability to work as of August 4, 2008, Dr. Swaminathan opined that Plaintiff could not work in any correctional setting, or any setting in which she would have to make quick decisions for *Page 11 
other people. However, contrary to his August 4, 2008 correspondence to Defendant, Dr. Swaminathan was then of the opinion that Plaintiff would have been capable of performing "some type of work that was not correctional" as of August 4, 2008.
29. The evidence does not establish that Plaintiff was aware that Dr. Swaminathan was of the opinion that she could return to work prior to his April 24, 2009 deposition. The hearing before the Deputy Commissioner was on February 27, 2009. Therefore, Plaintiff did not have an opportunity on this record to prove disability after the April 24, 2009 opinion that she could work was given by Dr. Swaminathan.
30. The Full Commission gives greater weight to the opinion testimony of Dr. Swaminathan over any contrary opinions of Dr. Chittilla and Dr. Good, since Dr. Swaminathan treated Plaintiff over a longer and more recent period of time following her November 1, 2007 work injury.
31. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's November 1, 2007 work injury materially aggravated her pre-existing schizophrenia and caused her to develop post-traumatic stress disorder.
32. The Full Commission finds based upon the greater weight of the evidence that Plaintiff is not at maximum medical improvement with respect to her compensable psychiatric conditions and that treatment with Dr. Swaminathan, or some other psychiatrist upon which the parties can agree, is reasonably required to effect a cure and/or provide relief for her psychiatric conditions of schizophrenia and post-traumatic stress disorder. Plaintiff is at maximum medical improvement with respect to her left shoulder and cervical spine complaints, but the Full Commission finds as fact that she will still benefit from a functional capacity evaluation, as recommended by Dr. Miller. *Page 12 
33. With respect to disability, the Full Commission finds as fact that Plaintiff's work injury rendered her medically disabled from any employment from November 1, 2007, the date of the work injury, through November 12, 2007, the date upon which Dr. Obi released her to return to work in a light-duty position. From November 13, 2007 through on or about January 15, 2008, Plaintiff worked for Defendant in a light-duty capacity. On January 15, 2008, Dr. Good took Plaintiff out of work due to a compensable aggravation of her pre-existing schizophrenia and Plaintiff did not return to work thereafter. From January 15, 2008 through April 24, 2009, Plaintiff continued to be medically disabled from any employment and written out of work by several treating physicians at varying times due to her November 1, 2007 work injury to her left shoulder and neck, her compensable aggravation of her pre-existing schizophrenia, and the development of post-traumatic stress disorder resulting from her compensable work injury.
34. Although Dr Swaminathan changed his opinion during his deposition testimony on April 24, 2009 and then opined that Plaintiff was capable of working in some capacity as of August 4, 2008, he did not during the period from August 4, 2008 through April 24, 2009, retract or amend the written opinion he gave in his August 4, 2008 correspondence to Defendant that Plaintiff could not work in any employment. The Full Commission therefore finds as fact that Plaintiff was medically written out of work until April 24, 2009.
35. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is entitled to salary continuation from November 1, 2007 through April 24, 2009, except for the period from November 13, 2007 through January 15, 2008, when she returned to work in a light duty capacity. Plaintiff's entitlement to indemnity compensation after April 24, 2009 cannot be determined from this record. *Page 13 
36. Defendant is entitled to a credit for short-term disability compensation paid to Plaintiff during the period from July 2, 2008 through April 24, 2009 through a program wholly funded by Defendant.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 1, 2007, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with Defendant to her left shoulder and cervical spine. N.C. Gen. Stat. § 97-2(6) (2009).
2. Plaintiff's November 1, 2007 work injury caused her to develop post-traumatic stress disorder and materially aggravated her pre-existing schizophrenia. Plaintiff's disability arising from these conditions is also compensable. Brown v. Family Dollar Distrib.
Ctr. 129 N.C. App 361, 364, 499 S.E.2d 197,199 (1998).
3. Plaintiff is entitled to have Defendant pay for the treatment incurred or to be incurred for her compensable physical and mental injuries, including but not limited to counseling, psychiatric treatment, prescriptions and mileage, for so long as such treatment is reasonably required to either effect a cure, provide relief or lessen her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25 (2009).
4. Plaintiff is at maximum medical improvement with respect to her left shoulder and cervical spine complaints, however, she would still benefit from the functional capacity evaluation recommended by Dr. Miller to assist in determining the extent of her physical *Page 14 
disability resulting from her compensable injury, and Defendant is obligated to provide such an evaluation. N.C. Gen. Stat. §§ 97-25; 97-(2)19 (2009).
5. Plaintiff is entitled to further psychiatric treatment, as such treatment is reasonably required to effect a cure, give relief, and/or lessen her disability from her psychiatric conditions of schizophrenia and post-traumatic stress disorder, for which she has not reached maximum medical improvement. Dr. Swaminathan or some other psychiatrist upon which the parties can agree is hereby designated as Plaintiff's authorized treating physician for the purpose of providing the future medical/psychiatric treatment Plaintiff requires in connection with the psychiatric conditions of schizophrenia and post-traumatic stress disorder related to her November 1, 2007 work injury. N.C. Gen. Stat. §§ 97-25, 97-25.1, 97-2(19) (2009).
6. As a result of her November 1, 2007 work injury, Plaintiff was taken out of work by various doctors and has proven she was medically disabled from working in any employment from November 1, 2007 through November 12, 2007, and from January 15, 2008, through April 24, 2009 when Dr. Swaminathan first gave the opinion that although she was not able to return to her pre-injury work, she could work in some employment as of August 4, 2008. Plaintiff was medically written out of work until Dr. Swaminathan changed his opinion on April 24. 2009. Thus, Plaintiff has met her burden of proving total disability under prong one of Russell
until April 24, 2009. As to Plaintiff's disability after April 24, 2009, Plaintiff has not had an opportunity to present evidence on this issue. Either party may file a request for hearing on this issue. Russell v. Lowes Prod. Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Plaintiff is entitled to salary continuation for the period she was totally disabled from work from November 1, 2007 through November 12, 2007 and from January 15, 2008 through April 24, 2009. N.C. Gen. Stat. § 143-166.14 (2009). *Page 15 
8. Defendant has not proven that Plaintiff constructively refused suitable employment. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996). Plaintiff has not been terminated from her position and was medically written out of work until April 24, 2009.
9. Defendant is entitled to a credit for short-term disability compensation paid to Plaintiff during the period from July 2, 2008 through April 24, 2009 through a program wholly funded by Defendant. N.C. Gen. Stat. § 97-42 (2009).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay salary continuation to Plaintiff from November 1, 2007 through November 12, 2007 and from January 15, 2008 through April 24, 2009. The accrued compensation shall be paid in a lump sum. Defendant is allowed a credit offset for any short-term disability compensation Plaintiff received during any of the periods set forth above through a program wholly funded by Defendant.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's November 1, 2007 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act, including the functional capacity evaluation recommended by Dr. Miller.
3. Dr. Viswanathan Swaminathan, or some other psychiatrist upon which the parties can agree, is hereby designated as Plaintiff's authorized treating physician, and Defendant shall *Page 16 
authorize and pay for the treatment that such physician either provides or recommends for Plaintiff's November 1, 2007 work injury, including, but not limited to any and all medical and psychological treatment or therapy which may reasonably be required to effect a cure, give relief, or lessen her period of disability.
4. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel, which shall be deducted from the sums due Plaintiff under paragraph one, above. Defendant shall deduct and pay directly to Plaintiff's counsel 25 percent of the compensation (salary continuation) owed to Plaintiff.
5. Defendant shall pay the costs of these proceedings.
This the ___ day of July 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1