***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout with modifications.
 *********** ISSUES
1. Is Plaintiff entitled to any further temporary total disability or temporary partial disability benefits?
2. May Plaintiff obtain a permanent partial impairment rating for his splenic injury? *Page 2 
3. Is Plaintiff entitled to any additional medical treatment?
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Defendant-Employer.
3. Ace Property Casualty Insurance was the carrier on the risk for Defendant-Employer.
4. On September 22, 2008, Plaintiff sustained an injury by accident when he was sawing a piece of wood and it kicked back and struck him in the abdomen, chest, and right arm.
5. Plaintiff does not presently work for Defendant-Employer. Plaintiff's last day was December 13, 2008.
6. Defendants accepted this claim via a Form 63 for medical compensation only. All treatment through January 21, 2009 has been provided for and paid by Defendants.
 * * * * * * * * * * *
Based upon all of the competent, credible evidence of record, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. On September 22, 2008, Plaintiff was employed by Defendant as an edge-bander machine operator when he sustained a bruised abdomen. Plaintiff's average weekly wage was $599.44.
2. Plaintiff initially treated for his injury with the Emergency Department of Carolinas Medical Center University Hospital in Charlotte, North Carolina. A CT scan revealed a splenic laceration with subcapsular hematoma and some evidence of arterial extravasation. On September 23, 2008, Plaintiff was transferred to Carolinas Medical Center Trauma Services in Charlotte, North Carolina. Plaintiff was discharged from that facility the following day. Upon discharge, Plaintiff's diagnosis was a Grade III splenic laceration. Plaintiff was restricted from engaging in sports activities, and contact sports in particular, and was instructed to engage in minimal activity for four to six weeks.
3. Plaintiff returned to the Surgical Trauma Clinic on October 8, 2008, for a follow-up visit. Plaintiff reported having mild epigastric and left shoulder pain and lightheadedness the previous night. He underwent a hemoglobin check and received a prescription for Percocet and was released to return on an as-needed basis. No changes were made to Plaintiff's work restrictions on October 8, 2008.
4. Shortly after his discharge on September 24, 2008, Plaintiff returned to work for Defendant-Employer at the same position and wages. Plaintiff sustained no diminution in wages upon his return to work, and he continued to work for Defendant-Employer until on or about December 13, 2008. *Page 4 
5. Following his return to work, Plaintiff did not report any pain related to the work injury to Defendants. He also did not request any assistance in performing his duties or indicate that he either wanted to or was instructed to work light duty.
6. On October 28, 2008, Plaintiff told Mike Ferguson, Defendant-Employer's owner and operator, that he did not have any continuing pain related to the injury of September 22, 2008.
7. On or about December 13, 2008, Plaintiff was terminated for insubordination, being disrespectful, unprofessional, and discourteous to co-workers, and refusing to accept responsibility for his mistakes. Specifically, Plaintiff yelled and spoke over a supervisor in front of others during a meeting, refused to cut wood when asked to do so, and had errors in his work, including missing parts and improperly banded edges, which he refused to accept responsibility for.
8. The misconduct for which Plaintiff was terminated was unrelated to his injury. Specifically, neither Plaintiff's splenic injury nor any alleged continuing pain would have any bearing on his acts of insubordination, disrespect to co-workers, and refusal to accept responsibility for problems with his performance.
9. The misconduct for which Plaintiff was terminated would have resulted in the termination of uninjured employees. Based upon the testimony at hearing and evidence in the record, the Full Commission finds that Plaintiff engaged in multiple instances of misconduct. These acts were in violation of Defendant-Employer's policies, which specifically provide that any employee who engages in these acts may be subject to dismissal. Furthermore, the evidence shows that Plaintiff engaged in a course of misconduct which began prior to his injury on September 22, 2008, and continued to escalate up to his termination in December of 2008. *Page 5 
10. Up to the time of his termination, Plaintiff was able to perform all his work duties without any pain or other symptoms related to the September 22, 2008 injury. The Full Commission specifically finds that Plaintiff's work was not slower and his performance was not in any way diminished as a result of the September 22, 2008 injury.
11. Likewise, after his termination, Plaintiff did not suffer from pain or any symptoms which would disable him from earning wages. The Full Commission notes that Plaintiff continued to earn wages after his termination at the rate of approximately $100.00 to $300.00 per week by making and selling wooden picture frames and sculptures. Plaintiff did not receive any work restrictions on December 17, 2008, December 22, 2008, January 21, 2009, or at any time thereafter.
12. Plaintiff has failed to show that he searched for and was unable to find employment due to his injury following his termination for misconduct. The Full Commission further finds Plaintiff was untruthful in his description of the extent of his job search.
13. On January 21, 2009, Dr. David Jacobs reviewed a CT scan, examined Plaintiff, and concluded that his spleen was healed. Accordingly, the Full Commission finds that Plaintiff's spleen was healed as of January 21, 2009. No further treatment has been recommended for Plaintiff's spleen.
14. Also on January 21, 2009, Dr. Jacobs rendered a working diagnosis of possible costochondritis or possible neuropathic pain. Dr. Jacobs' treatment on this date consisted of prescriptions for Motrin for the costochondritis and Neurontin for the neuropathic pain. Dr. Jacobs noted the difficulty of accurately diagnosing these conditions and acknowledged that diagnosis depended largely on the veracity of the patient's subjective reports of pain. The Full *Page 6 
Commission finds that Plaintiff did not return to Dr. Jacobs to confirm these diagnoses after January 21, 2009.
15. Given that Dr. Jacobs did not have an opportunity to confirm his diagnosis, Plaintiff's questionable credibility, and the fact that Plaintiff did not complain of symptoms after January 21, 2009, the Full Commission accords little weight to Dr. Jacobs' working diagnosis.
16. Dr. Jacobs concluded that a pain consultation might be needed if Plaintiff did not obtain relief from his treatment plan of taking Motrin and Neurontin. However, because Plaintiff did not report continued symptoms to either Dr. Jacobs or any other provider after January 21, 2009, the Full Commission finds that no further treatment is recommended for Plaintiff's possible costochondritis or neuropathic pain.
17. Plaintiff has a history of high blood pressure which pre-exists his September 22, 2008 injury. At the time of the injury, Plaintiff had not monitored his blood pressure with Physician Assistant Donna Murray Lacey in over a year, was not on a low-salt diet, and smoked half a pack of cigarettes per day.
18. Plaintiff's blood pressure was elevated when he initially treated for his injury on September 22, 2008, however, it had returned to within normal limits at the time of discharge on September 24, 2008.
19. Plaintiff's blood pressure was elevated when he treated on October 8, 2008, however, it was again within normal limits by the time he returned for treatment on December 17, 2008.
20. Plaintiff's blood pressure was elevated on January 21, 2009, however, it was within normal limits by May 5, 2009. *Page 7 
21. The Full Commission finds it unlikely that Plaintiff's intermittent high blood pressure was aggravated by the injury of September 22, 2008 itself. Rather, Plaintiff's elevated blood pressure may have been related to stress. Given that Plaintiff's elevated blood pressure largely coincides with his dates of treatment, the Full Commission finds that Plaintiff sustained a temporary aggravation of his high blood pressure on his dates of treatment, and that said aggravation ceased after March 9, 2009. The Full Commission specifically finds that any elevated blood pressure which Plaintiff experienced following March 9, 2009 is not related to Plaintiff's injury.
22. The Full Commission finds that no provider placed any work restrictions on Plaintiff following the four to six week period of restrictions he received upon his discharge from Carolinas Medical Center Trauma Services on September 24, 2008.
23. The Full Commission accords more weight to the testimony of Mike Ferguson than that of Plaintiff with respect to the facts surrounding Plaintiff's employment, complaints of pain at work, lifting requirements, and the reasons for Plaintiff's termination.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his spleen on September 22, 2008. N.C. Gen. Stat. § 97-2.
2. Under the North Carolina Workers' Compensation Act, an employee can prove that he is disabled in one of four ways: by production of (1) medical evidence that he is physically or mentally, as a consequence of his work-related injury, incapable of working at any *Page 8 
employment; (2) evidence that he is capable of some work but has not, after a reasonable effort, been successful in his efforts to obtain employment; (3) evidence that he is capable of some work but that it would be futile, because of the pre-existing conditions, i.e., age, lack of education, to seek other employment; or (4) evidence that he was able to obtain other employment at a wage less than earned prior to his injury. Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E. 2d 454.
3. Plaintiff has failed to establish that he was disabled under the North Carolina Workers' Compensation Act between the time of his injury on September 22, 2008 and his termination by Defendant-Employer on or about December 13, 2008. N.C. Gen. Stat. § 97-2.
4. On or about December 13, 2008, Plaintiff was terminated for misconduct and fault unrelated to his compensable injury, for which an uninjured employee would ordinarily have been terminated by Defendant-Employer. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996). Accordingly, Plaintiff's termination constituted a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32; Id.
5. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that his inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra. In the instant case, Plaintiff did not sufficiently show that, following his termination on December 13, 2008, he was incapable of finding work because of his work-related injury. In fact, the evidence shows that no work restrictions were assigned to Plaintiff on December 17, 2008, December 22, 2008, January 21, 2009, or at any time thereafter, and that Plaintiff did not suffer from any pain or symptoms which would disable him from earning wages following his termination. *Page 9 
Furthermore, the evidence shows that Plaintiff did in fact continue to earn wages following his termination by making and selling wooden picture frames and sculptures. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. Plaintiff has failed to establish that other medical conditions, including high blood pressure, are related to the original compensable injury and therefore, any claim for medical treatment for those conditions is hereby denied. N.C. Gen. Stat. § 97-2.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claims for temporary total disability benefits and temporary partial disability benefits are hereby DENIED.
2. Plaintiff may obtain a permanent partial impairment rating for his splenic injury, and permanent partial disability benefits based thereon.
3. Plaintiff's claim for additional medical treatment is hereby DENIED.
4. Each side shall bear its own costs.
This the 2nd day of September, 2010.
 S/___________________________ LINDA CHEATHAM COMMISSIONER
CONCURRING: *Page 10 
 S/___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________________ DANNY LEE McDONALD COMMISSIONER *Page 1